TERESA O'CONNOR ADAMS, Plaintiff, *v.* F. W. WOOLWORTH COMPANY and Others, Defendants.

TERESA O'CONNOR ADAMS, Plaintiff, *v.* F. W. WOOLWORTH COMPANY and Others, Defendants.

Supreme Court, New York County, June 13, 1932.

*Flynt, Sully & Horn [Wilberforce Sully, Jr., of counsel], for the plaintiff.*

*Davies, Auerbach & Cornell [William J. Walker of counsel], for defendants Woolworth and Tietman.*

*Harry S. Heckheimer, for defendants Lowenthal and Ellis.*

ROSENMAN, J. These two actions were tried together by the court without a jury pursuant to a stipulation providing for separate verdicts in each case. The first action is for false imprisonment; the second for slander. On the trial the title of the false arrest action and the complaint therein were amended so as to substitute defendant Lowenthal, doing business as Eureka Detective Bureau, in the place of the defendant Eureka Detective Bureau, Inc. Both causes of action arise from the same set of circumstances. Defendant F. W. Woolworth Company operates a chain of five- and ten-cent stores. Defendant Lowenthal conducted a detective agency under the name and style of Eureka Detective Bureau. Woolworth Company and Lowenthal entered into a contract.

The contract provided that Lowenthal would place detective service in certain stores of Woolworth Company, that he would have an operator present and would personally supervise the operator's activities. Lowenthal was to investigate questionable conditions implicating any employee of Woolworth Company and any other conditions relating to any employee of Woolworth Company which Woolworth Company might see fit for him to investigate. He was also to investigate " references, mode of living, character, etc.," of employees or applicants for employment with defendant Woolworth Company and notify it of any violation of its rules or any misconduct by any manager or other employee of Woolworth Company. He agreed further to prosecute customers detected stealing over fifty cents and employees stealing over one dollar of merchandise and to secure such statements and confessions as he deemed advisable. The contract provided that Lowenthal would furnish necessary witnesses from among his own operators and not call on any employee of Woolworth Company to appear in court or interfere with its organization. Lowenthal was to take such steps against employees or customers stealing less than the above amounts as would " minimize possibility of a recurrence." He was to assume all expense and responsibility for actions or lawsuits arising out of his acts or those of his employees, and indemnify Woolworth Company from damages resulting therefrom. The agreement was terminable at any time by either party

on five days' notice. Payments of compensation under the contract were to be made to Lowenthal by the week.

The defendant Tietman was the general manager of the store of the Woolworth Company at 33 West Forty-second street, New York city. His duties included "the protection of the store and the property in the store;" and it appeared that under his instructions "if he apprehended a person for stealing it was his duty, if he was going to have him arrested, to call a police officer."

On November 11, 1930, Lowenthal had a detective operator in the store, named Ellis. The plaintiff is a young lady, evidently refined and cultured, who occupied and still occupies a responsible position with a large publishing company. On November 11, 1930, she went into the store to make some purchases. After buying and paying for several articles, she left the store. She was followed onto the sidewalk by defendant Ellis, was told by Ellis that she had stolen some merchandise, and was asked to return to the store. She complied and was taken into a back room of the store and there detained. Tietman soon appeared. The plaintiff protested her innocence, maintaining that the merchandise had all been paid for. One of the items of merchandise in question was some handkerchiefs. Tietman went out into the store, made some inquiry relating to whether or not these handkerchiefs had been paid for; and, re-entering the room where plaintiff was being detained, said to Ellis in substance: " They have not been paid for; do with her as you please." Tietman then left the room and did not appear again in the transaction. Ellis examined the contents of the plaintiff's pocketbook; saw that she was the owner of a car and apparently had some means; pointed out to her the expense and the humiliation and disgrace which she would have to undergo as a result of further action by him; and thereupon proceeded to extort from the plaintiff the sum of $1,000 to obtain her release. The plaintiff was about to be married. She testified that she was beside herself with shame and fear lest her mother learn of the matter; she told Ellis that she could get the $1,000. Ellis then thrust a piece of paper before her which he falsely represented to her was a guaranty that she would pay him the $1,000, covered its contents with his hand, and told her to sign. She signed. She knew nothing of its purport or contents. It later turned out to be a blank printed confession which was subsequently filled in without her knowledge. Ellis thereupon conducted plaintiff through the store, over to the plaintiff's place of employment several blocks away, then to the plaintiff's bank, where the $1,000 was obtained and passed to Ellis. Thereupon the plaintiff was released by Ellis. Shortly thereafter the plaintiff reported these facts to her *fiancé.*

I find as a fact that this plaintiff did not steal any merchandise. I find that whatever merchandise was taken by her had been bought and paid for. I conclude that the statement by Tietman that they had not been paid for was untrue when made. I determine that the detention of the plaintiff was unlawful and that a false arrest was made of her. I disregard the purported confession as having been obtained by fraud, duress and fear.

For this unlawful arrest Lowenthal and Ellis are clearly liable. Woolworth Company, however, disclaims all liability, maintaining *inter alia* that Lowenthal was an independent contractor only, and not its employee or agent.

The relationship of independent contractor is difficult of general determination and definition. It must necessarily depend on the different circumstances of different situations. (Pollock Torts [13th ed.], 541 *et seq.*) In 14 Ruling Case Law (at p. 67) the definitions of independent contractor are set forth as follows: "According to the definition substantially adopted by many courts, with some variations in language, an independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work. An independent contractor has been described also as one who contracts to perform the work at his own risk and cost, the workmen being his servants and he being liable for their misconduct. A yet shorter definition, and one which, perhaps, fails to comply with the requirements of a logical definition, is that an independent contractor is one who is independent of his employer in the doing of the work, and may work when and how he prefers."

" If defendant claims that he is not liable because the work was being done by an independent contractor, the burden is upon him to prove such relationship, especially where a *prima facie* case to show the relation of master and servant is made out, or where the facts recited are as consistent with the theory of the relationship of master and servant as with that of independent contractor." (39 C. J. 1357, § 1582.) *Baldwin* v. *Abraham* (57 App. Div. 67; affd., 171 N. Y. 677) is authority to similar effect.

The contract was to be performed in Woolworth Company's store. The persons to be investigated could be determined upon by Woolworth Company. There was here no specific job or piece of work to be performed. Lowenthal was to render continuous service to be paid for each week. It is important to note that at any time Lowenthal could be discharged or could discontinue his services on five days' notice.

" The power of an employer to terminate the employment at any

time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." (14 R. C. L. 72.)

I am of opinion that Lowenthal was an agent of Woolworth Company, employed to make arrests; and that, therefore, Woolworth Company is liable for the false arrest made.

But even if it be concluded that Lowenthal was only an independent contractor, I still adhere to the view that Woolworth Company is legally responsible for the false arrest.

This result might be based on the participation by Tietman in the act of arrest, indicated in his statement to Ellis, " Do with her as you please." Woolworth Company is responsible for Tietman's part in the arrest. (*Dupre* v. *Childs*, 52 App. Div. 306; affd., 169 N. Y. 585.)

But recourse need not be had to the act of Tietman. A store owner who places a detective agency on his premises for the purpose of protecting his property by various means, including arrests, should not be immune from responsibility to an innocent victim of a false arrest made by the detective agency, even as an independent contractor.

The present tendency of the law in fastening liability on the principal for acts of an independent contractor is set out in Salmond's Law of Torts (7th ed.), at pages 135 and 136, as follows: " The tendency of legal development is in the direction of extending rather than restricting the vicarious liability of employers of independent contractors, and it is impossible therefore to state with any confidence the exact scope and limits of this form of responsibility. * * *

" There are certain exceptional classes of cases in which, although the act authorised to be done by an independent contractor is not in itself illegal, and is not the kind of act which is a ground of absolute liability independent of all negligence, nevertheless its delegation to such a contractor is permitted by law only on the terms that the employer shall be vicariously responsible for any negligence of which the contractor is guilty in the doing of it. The act is of such a nature that the employer on whose behalf it is done is not permitted, in thus exposing other persons to danger, to defend himself from responsibility for the consequences by the plea that the agent selected by him for the doing of the act was not a servant, but an independent contractor."

There appear to be no direct precedents on the question of liability for a false arrest made by an independent contractor detective agency. The tendency of our law, indicated above, would, however, clearly be toward the imposition of vicarious responsibility. Customers of Woolworth Company are invited into the store to buy its merchandise, for the profit of Woolworth Company. Can it be said that Woolworth Company can disclaim all duty of protecting them from the tortious acts of detectives brought by it into its own premises for the very purpose, among others, of making arrests of its customers? This is not the case of a contractor doing his work negligently. Where negligence is the sole basis of the liability, the doctrine of *respondeat superior* has been held inapplicable to independent contracts. Negligence does not enter into the tort of false arrest. The act itself, if not justified under the statute (Code Crim. Proc. § 183) is tortious, irrespective of negligence. Lowenthal was brought onto the premises to watch and also to arrest. Immunity from vicarious liability would permit any storekeeper to subject his customers to the hazards of an irresponsible detective agency without peril to himself. He would obtain all the benefit of the surveillance and punishment of shoplifters; he would be subject to none of the penalties for unjustified or unlawful arrests of law-abiding citizens. The opportunities for gross injustice afforded by such a doctrine are too manifest to permit its incorporation into the jurisprudence of our State, without compelling reason.

Although based on different facts and circumstances, the principle of those cases which impose liability on landlords of premises on which third persons are injured by acts of independent contractors should be extended to cover the facts of the case *sub judice*. (*Sciolaro* v. *Asch*, 198 N. Y. 77; *Besner* v. *Central Trust Co.*, 230 id. 357.)

The liability of Woolworth Company cannot be extended, however, to any of the acts of extortion committed by Ellis. Nor can the defendants Tietman and Lowenthal be taxed therewith. Ellis committed those acts on his own responsibility, without any authority, apparent or real, from any of the other defendants; and for the actual malice accompanying his acts he should be subjected to punitive damages.

For the false arrest up to the commencement of the extortion the actual damages sustained are not gross. The detention lasted only for a short time. There was practically no display of the arrest. I direct verdict against the defendants F. W. Woolworth Company, Lowenthal and Tietman in the sum of $1,000. Against the defendant Ellis I direct a verdict of $5,000, which includes

punitive damages. The total recovery of the ·plaintiff on this cause of action is not to exceed the said sum of $5,000.

As to the cause of action for slander, the words are slanderous *per se* and compensable without proof of special damage. One of the results of the spoken words was the false arrest. It has, however, been compensated for in the foregoing verdict. Other substantial damage, attributable to the slander, as distinguished from the arrest, has not been shown. The slander ·was heard only by two detectives. It has concededly not damaged the reputation or standing of the plaintiff. I, therefore, direct a verdict of $100 against defendants F. W. Woolworth Company and Tietman on the cause of action for slander.

In both cases exception is granted to defendants. Thirty days' stay and sixty days to make a case.