**Mary McLEOD, Plaintiff,**

v.

**Raymond DEAN, d/b/a Dean's Protective Service, Daitch Crystal Dairies, Inc., and John Doe, Defendants.**

**No. 64 Civ. 3241.**

United States District Court
S. D. New York.
April 19, 1967.

Lawrence G. Nusbaum, Jr., New York City, for plaintiff.

Gabriel Mosner, New York City, for defendant, Raymond Dean.

Bernard Helfenstein, by Barnet S. Blume, Brooklyn, N. Y., for defendant, Daitch Crystal Dairies, Inc.

MOTLEY, District Judge.

### Cross-Claim

#### Findings of Fact and Conclusions of Law

Defendant Raymond Dean (Dean) is the owner of a protective service which orally agreed with defendant Daitch Crystal Dairies (Daitch) to furnish a Dean guard to protect the merchandise in a Daitch store from pilferage by customers. Defendant Canty is the guard furnished pursuant to this agreement. Before he was assigned to stores by Dean, Canty had undergone a two-week period of training and orientation as a store guard. Upon reporting to the Daitch store in question, the manager

directed Canty where to stand and which counters to guard with especial care. The Daitch store manager instructed Canty to inform him should Canty detect any shoplifting. The manager also directed Canty where to station himself when the manager was out to lunch. Canty punched two time cards each morning when he arrived at the Daitch store—one for Daitch and one for Dean. Daitch paid Dean who in turn paid Canty.

The plaintiff, Mary McLeod, recovered a judgment in the amount of $3,000 for slander against Dean, Daitch and Canty upon which this cross-claim by Daitch is based. The plaintiff's action for slander arose out of questions directed by Canty to plaintiff, a female customer of the Daitch store involved, in the course of a conversation with the plaintiff about the disposition of a certain article of merchandise which Canty erroneously believed he saw her put into her tote bag.

After a jury verdict on March 3, 1967 for plaintiff against all three defendants defendant Daitch by this cross-claim seeks:

1. to have the court determine the rights of the parties as between themselves;

2. judgment over against defendants Dean and Canty; and

3. costs, disbursements, and expenses incurred in the defense by Daitch.

■ In the first instance, we are faced with the question of the relationship between Daitch and defendants Dean and Canty. Was the protective service an independent contractor or the agent of Daitch? To determine this question we must look to the surrounding facts and circumstances. This contract was to be performed in the Daitch store. A Daitch store manager on the premises could and did give directions to the Dean employee on how to carry out his function of protecting the Daitch merchandise from pilferage by customers of Daitch. In addition, there is the important consideration that the contract could be terminated by either Dean or Daitch at will.

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." 14 Ruling Case Law 72.

The control that Daitch exercised went considerably beyond merely dictating the *result* of the work to be done under the contract. Under these circumstances, the court must conclude that Dean is not an independent contractor but an agent for Daitch. Adams v. F. W. Woolworth, 144 Misc. 27, 257 N.Y.S. 776 (1932).

■■ It is a well settled rule that a principal or master may be held liable in damages for slander by his agent or servant where the latter was carrying out express orders, or acting according to express or implied authority, or in discharge of his duties within the scope of or usual course of employment. 53 C.J.S. Libel and Slander § 150 (1948). An act, although forbidden, or performed in a forbidden manner, may be within the scope of employment. Restatement (Second), Agency § 230 (1958). It has long been established that

"The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do." Cosgrove v. Ogden, 49 N.Y. 255, 257 (1872).

■ When defendant Canty inquired of the Daitch customer as to the disposition of goods he thought he had

seen the customer handle, he was acting to further the interest of Daitch and under Daitch authority—expressed and implied. For such an authorized act Daitch is liable in damages. Brown v. Great Atlantic & Pacific Tea Co., 275 App.Div. 304, 89 N.Y.S.2d 247 (1949).

The jury verdict having been returned against all three defendants, the question of defendants' rights as between themselves remains. This is not a simple case of negligence by an agent or servant where the established doctrines of active and passive tortfeasors come into play. What we have here is a case where the very act in question is an act which was authorized by Daitch, done at the direction of Daitch, and in the furtherance of the interests of Daitch. The fact that this was an authorized act makes it an exception to the general rule that an agent who subjects a principal to liability because of his wrongful act is subject to liability to the principal for the loss which results therefrom. Restatement (Second), Agency § 401d (1958).

To these exceptional cases, a different rule applies. Where a person, acting at the direction of and on account of another, does an authorized act because of which both are liable in tort, the person who did the act is entitled to indemnity from the other for expenditures properly made in the discharge of such liability—providing the actor acted in good faith and the act is not apparently illegal. Paderefsky v. Scala, Sup., 129 N.Y.S.2d 661 (1954); Howe v. Buffalo, N. Y. & Erie R. R. Co., 37 N.Y. 297 (1867); See, People ex rel. Van Keuren v. Board of Town Auditors of Town of Esopus, 74 N.Y. 310 (1878); Restatement, Restitution § 90 (1937); 42 C.J.S. Indemnity § 20 (1944).

Provided the act was within the scope of his authority, the agent has a right to indemnity from the principal even though the act was wrongful and the agent lost a suit brought by the third party against him. *Howe,* supra.

"[I]f a servant is compelled to pay damages for injuries to a third person not caused by his negligence or willful and wrongful act except as directed by his master, he may recover over from his master; and an agent may similarly recover against his principal * * *." 42 C.J.S. p. 596.

Therefore, in the case before the court, though plaintiff has a valid judgment against all three defendants, as between the defendants, Dean and Canty have a right to be indemnified by Daitch for any expenditures they have made or may make in discharge of this liability.

This result is dictated by and rests upon a decisional law. However, as Adams v. F. W. Woolworth, supra, has pointed out, there are, in addition, strong policy considerations raised by a case of this nature.

The owner of a store, if he so chooses, is entitled to take certain measures to protect his merchandise from pilferage —including the hiring of store guards. It should be contemplated that authorized guards in carrying out their authority to protect the merchandise may speak to customers and that such speech in some instances may give rise to an action for slander. This should be a risk that the store owner assumes in electing to use certain measures to protect his merchandise. Without guards or other devices a store owner runs all the risks of pilferage.

He should not merely by placing guards in his store be able to escape all risks and responsibility. He has a right to protect his merchandise, but as with the exercise of many rights, there must be attendant risks. Guards placed in a store are viewed by the public as working and acting for the store. Their primary reason for being there is to protect and advance the store owner's economic interest. In such circumstances, ultimate accountability for the guards' authorized acts should rest with the party who is exercising control over the store and enjoying the fruits of protection.

Defendants Dean and Canty are entitled to be indemnified by Daitch for any expenditures they have made or may make as a result of plaintiff Mary McLeod's action for slander against them.

Based on the foregoing findings of fact and conclusions of law, defendant Daitch's cross claim for judgment over against defendants Dean and Canty, and for costs, disbursements and expenses incurred in the defense of this action by Daitch is denied.