NASH *v.* SEARS, ROEBUCK & COMPANY.

OPINION OF THE COURT.

1. TORTS—FALSE ARREST—LIABILITY OF STOREKEEPER—INDEPENDENT CONTRACTOR—PUBLIC POLICY.

Duty owed by a storekeeper to the public to keep. invitees in its store safe from assault and· 'false arrest by a guard in the store *held*, not to be delegable· so as to relieve the storekeeper from liability even if the guard is a servant of an ·independent contractor.

2. SAME—FALSE ARREST—ASSAULT AND BATTERY—DIRECTED VERDICT.

Determination by trial court that defendant department store corporation was liable to a customer as a matter of law for an assault and battery and false arrest inflicted ·on customer by guard furnished by protective service *held*, proper, as against argument that protective service was an independent contractor and that work performed by its servants in defendant's store was not intrinsically or inherently dangerous.

3. SAME—FALSE ARREST—EVIDENCE—JURY QUESTION.

Testimony by private guard furnished to department store by protective service that he was informed by woman employee of department store that plaintiff had committed a larceny in the store, to explain his assault and arrest of plaintiff, *held*, not to present a jury question as to whether a felony had been committed and therefore as to whether the guard ' was justified in arresting plaintiff without a warrant, where the evidence was not admitted to prove the truth of the matter asserted by the saleswoman but rather to prove that

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6, 8, 12, 14, 15] 32 Am Jur 2d, False Imprisonment §§ 45, 47.
Principal's liability for false arrest or imprisonment caused by agent or servant, 92 ALR2d 15.
[3] 32 Am Jur 2d, False Imprisonment § 105.
[4] 5 Am·Jur 2d, Appeal and Error § 684 *et seq.*
[5,.7, 9, 13] 41 Am Jur 2d, Indemnity § 19 *et seq.*
[10] 53 Am Jur, Trial § 829.
[11] 35 Am Jur, Master and Servant § 541.

the saleswoman said something relevant to the cause, the identity of the saleswoman was known to all the parties to the action but she was not called as a witness by anyone, and there was no other testimony that a theft had been committed.

4. Appeal and Error—Erroneous Statement by Trial Judge—Argument on Appeal.
  Argument by cross-plaintiff on appeal, that trial court erred in determining that cross-defendant was not liable to it for negligence when trial court determined that cross-defendant had been negligent as a matter of law as to principal plaintiff fails where the record shows that at the trial the trial judge did not instruct the jury that cross-defendant was negligent as a matter of law as to principal plaintiff, but left it as a jury question, and trial judge's statement that he had determined that cross-defendant was negligent as a matter of law as to principal plaintiff was an erroneous recollection at the hearing on motions for a new trial and for judgment notwithstanding the verdict.

5. Torts—Indemnification—Intentional Tort.
  General rule that where one is held liable without fault because of the negligence of another, he is entitled to indemnity from the actively negligent party, has no application to a case where a defendant department store is held liable to plaintiff customer for breach of its nondelegable duty to protect its invitees from the intentional torts of assault and battery and false arrest committed by a guard furnished by a protective service who was acting for the department store at the time the torts were committed.

6. Same—False Arrest—Active Negligence—Servant.
  Liability of defendant department store in action by plaintiff customer for assault and battery and false arrest committed on her by guard furnished by protective service to department store cannot be founded on active negligence of department store based on the conduct of its saleswoman in informing guard that plaintiff had committed a larceny in the store, because the conduct of the saleswoman did not constitute participation in the arrest which ensued.

7. Same—Indemnification—Negligence—Jury Verdict.
  Cross-plaintiff department store cannot get indemnification from cross-defendant protective service for damages awarded against both in favor of plaintiff customer in action arising out of assault and battery and false arrest of customer, where, be-

cause of the manner in which the case was submitted to the jury, it cannot be determined whether cross-defendant was held liable without fault on the same theory as cross-plaintiff was held liable, or on the theory that cross-defendant was negligent in the selection and training of its employee who caused the injury.

8. SAME—CONTRACT—ORAL AGREEMENT—TERMS—JURY QUESTION.

Submission by trial court to jury of question whether cross-defendant protective service had agreed that guards furnished by it to cross-plaintiff department store would not make arrests for shoplifting if they did not see the shoplifting personally *held,* proper in case where testimony showed that cross-plaintiff and cross-defendant had discussed the "no-arrest" provision of the agreement, but it was not clear that the "no-arrest" agreement was a contractual provision.

9. SAME—CONTRACT—INDEMNIFICATION—ISSUES.

Refusal by trial court to give jury instruction that if cross-defendant protective service did not use due care in selecting and furnishing guard to cross-plaintiff department store, and that if this failure was the proximate cause of an assault and battery committed by a guard furnished by cross-defendant on a customer in cross-plaintiff's store, cross-defendant was liable to cross-plaintiff for indemnification in action by customer against department store and protective service *held,* proper, where the claim by cross-plaintiff against cross-defendant was founded on an oral contract to furnish guard services; the issue was properly whether the kind of guard contracted for was provided by cross-defendant.

10. TRIAL—JURY INSTRUCTIONS—BLANKET EXCEPTION.

A blanket exception to the jury charge delivered by the trial court is not proper, even though offered by the trial judge, and will not operate to preserve an issue on appeal, even if accepted.

OPINION CONCURRING IN PART AND DISSENTING IN PART.
LEVIN, J.

11. MASTER AND SERVANT—DUAL EMPLOYMENT.

*A servant directed or permitted by his master to perform services for another may become the servant of the other in performing the services, and merely because he has become the servant of another does not necessarily mean he has ceased to be the servant of the original master.*

12. Same—Dual Employment—Independent Contractor—Protective Service.

A guard who was in the general employment of a protective service which supplied guard and protective service for a number of different employers could nonetheless become a servant of a department store to which he had been supplied by the protective service, and was the servant of both where he had received parallel directions respecting the performance of his duties from the protective service and the department store, he was acting on the business of both, both retained a measure of control over him and the right to supervise, direct, and discharge him from further service for the department store, and he worked with other department store employees and was expected to respond to intelligence received from them; hence the department store as well as the protective service was responsible for his intentional tort in committing an assault and battery and false arrest on a customer of the store.

13. Torts—Indemnification—Contract—Furnishing of Services —Qualified Employee.

Charge to jury, in cross-action by cross-plaintiff department store against cross-defendant protective service, that jury must determine whether protective service had agreed to furnish a qualified guard in department store was error because it is an implied term of every contract to supply services that the services will be performed in a reasonably skillful manner.

14. Contracts—Services—Due Care.

A contractor who undertakes to supply servants to perform services for another impliedly agrees to use due care in selecting, training and instructing the servants it supplies for that purpose.

15. Same—Services—Protective Service—Guard.

Protective service which agreed to furnish a guard to department store impliedly obligated itself to furnish a properly selected, trained, and instructed guard, and cross-plaintiff department store was entitled to a jury charge to that effect in its action against cross-defendant protective service arising out of assault and battery and false arrest committed by guard on customer of department store.

Appeal from Wayne, Brennan (Thomas E.), J. Submitted Division 1 December 14, 1966, at Detroit. (Docket No. 1,183.) Decided July 31, 1968. Rehear-

ing denied November 6, 1968. Leave to appeal granted February 11, 1969. See 381 Mich 800.

Complaint by Mary Lee Nash and Dan Nash against Sears, Roebuck & Company, a New York corporation, Heidt's Protective Service, Inc., a Michigan corporation, and Art Keolian, for assault and false arrest of Mary Lee Nash and loss of consortium of Dan Nash. Cross-complaint by Sears, Roebuck & Company against Heidt's Protective Service, Inc. Judgment for plaintiffs against all three defendants. Judgment of no cause of action on Sears' cross-complaint. Defendants appeal. Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for plaintiffs.

*Alexander, Buchanan & Conklin* (*Donald E. Miller,* of counsel), for defendant Heidt's Protective Service, Inc.

*Bodman, Longley, Bogle, Armstrong & Dahling* (*Michael B. Lewiston,* of counsel), for defendant Sears, Roebuck & Company.

LESINSKI, C. J.    Defendant Sears, Roebuck & Company appeals from a judgment totaling $17,250 on a verdict entered below for plaintiffs, Mary Lee Nash and Dan Nash. Sears seeks a reversal and remand for new trial, or, in the alternative, a setting aside of the judgment of "no cause" against it on its cross-claim against codefendant Heidt's Protective Service, Inc., for entry of judgment against the latter, or a new trial on its cross-claim. The relief sought by defendant Heidt's Protective Service, Inc., is a reversal of the judgment below in favor of the

plaintiff and an affirmance of the judgment of "no cause" in its favor on the above-mentioned cross-claim.[1]

The plaintiff brought action against Sears, Heidt's and Arthur Keolian for false arrest, false imprisonment, and assault and battery committed by Keolian who was an employee of Heidt's with whom Sears had contracted to furnish guard service at its store located at 8000 Gratiot at Van Dyke in Detroit. An amendment to plaintiff's complaint added a further count of negligence against the two corporate defendants based on the employment of Keolian[2] as a guard.

The incident which gave rise to plaintiff's cause of action took place on September 4, 1962, when Keolian, in guard uniform, apprehended the plaintiff, a departing Sears' customer, on the sidewalk adjacent to the store. He noticed she had loose merchandise and demanded to see receipts. Plaintiff was able to produce only one. Keolian tried to get her back to the store; however, she refused to go and struck Keolian with her umbrella and started to walk away. Keolian then shoved her to the ground, straddled her body and pinned her arms above her head. They remained in this position until a crowd gathered and the police arrived. A

---

[1] For convenience, defendant Sears, Roebuck & Company, will hereinafter be referred to as Sears; defendant Heidt's Protective Service, Inc., will be referred to as Heidt's, and the plaintiffs, Mary Lee Nash and Dan Nash will be referred to in the singular as the plaintiff—meaning Mrs. Nash. It was she who sustained the injuries complained of for which relief was granted below in the amount of $16,250. The damages sought by Mr. Nash for medical expenses and loss of consortium, which the jury valued at $1,000, were dependent upon the verdict and judgment favorable to her.

[2] Arthur Keolian, the third defendant named in this cause, was served with summons and complaint. He filed no appearance. The resulting default was explained to the jury by the court in his instructions. Keolian testified at the trial. He was called by Heidt's for cross-examination as an adverse party under the statute, and further cross-examined by the other parties to the litigation.

subsequent examination of plaintiff's possessions by the police revealed that the shoplifting charge was without foundation.

According to Keolian's testimony, he was summoned to the lingerie department in response to a bell call in the store. A saleslady told him that a woman had taken some merchandise, stuffed it into a shopping bag, and left the store. Keolian stated that when he was unable to find the suspected party on the basis of the sparse description of her attire given to him initially, he returned to get his informant, and that the saleslady accompanied him to the door and pointed the plaintiff out to him.[3]

The plaintiff alleged and proved physical injuries and expenses, as well as accompanying humiliation, pain and suffering resulting therefrom, none of which are at issue here.

The testimony showed that Sears and Heidt's, through their agents, had entered into an oral contract in 1957 whereby Heidt's was to furnish guards on a part-time basis to the Sears store at Gratiot and Van Dyke. Sears paid Heidt's for this service at the rate of $2 per hour per guard supplied. Heidt paid the guards.

The first issue raised by Sears alleged that the court erred in directing a verdict against Sears on the counts of assault and battery and false arrest. The court determined that as a matter of law, there was an assault and battery and false arrest for which Sears was liable as a matter of general policy, because there is a nondelegable duty owed by any such business to the public. Sears does *not* contend that there was not, as a matter of law, an assault and

---

[3] The saleslady, whose identity was known to all parties, was not called as a witness below.

battery and a false arrest,[4] but rather argues that it was not liable therefor.

Sears' argument is that Heidt's was an independent contractor, for whose torts Sears, as employer, should not be held liable. On this point Sears cites two venerable Michigan cases, *De Forrest* v. *Wright* (1852), 2 Mich 368, and *Riedel* v. *Moran, Fitzsimons Company, Limited* (1894), 103 Mich 262. Both cases are factually distinguishable, in that in both *De-Forrest* and *Riedel* the acts for which the plaintiff sought to hold the defendant liable sounded in negligence. The instant case involves, as to the counts here under discussion, intentional torts. Therefore, we are not required to consider the authorities cited as controlling.

Sears' principal argument on this issue, however, is that the exception to the employer's nonliability is found where the work delegated is intrinsically or inherently dangerous. Although this exception is well settled in Michigan law, it is not the exclusive exception as Sears would imply. We refer to the very title of section 35 in 13 Callaghan's Michigan Civil Jurisprudence under the topic Independent Contractors, which is "Exceptions to the rule of nonliability," and to the variety of cases cited in sections 35 through 42 of 13 Michigan Civil Jurisprudence, *supra*. The case on which Sears places heavy reliance in its argument is *Cary* v. *Thomas* (1956), 345 Mich 616. The *Cary Case* dealt with liability for the negligent act of the independent contractor in an allegedly inherently dangerous activity; since the trial court here did not direct a verdict on the theory of an "inherently dangerous" activity, but rather on the basis of public policy, and since the activity giving rise to liability here was not negli-

---

[4] This contention is one of Heidt's issues, and will be developed *infra*.

gence but rather the infliction of injury through the commission of intentional tort, the law in *Cary* is inapplicable.

Most important, however, is the line of authority cited by the plaintiff from the annotation in 92 ALR 2d 15, "Principal's liability for false arrest or imprisonment caused by agent or servant" wherein it is stated at p 61:

"Generally the defendant has been held liable for a false arrest caused by such an agent [*i.e.,* one under contract to defendant] where the contractual services to be performed by the agency consisted of the protection of the defendant's property from theft or embezzlement by its customers or employees. In some of these cases, it has been expressly held or stated that defendant could not escape liability on the ground that the false arrest had been caused by an employee of a mere independent contractor."

In the absence of Michigan case law on the question of whether or not this fact situation presents a non-delegable duty, we consider the authority cited from out-of-state and find it valid.

The responsibility owed the public by storekeepers to keep invitees safe from attacks such as was suffered by the plaintiff here cannot be delegated by an invitor so as to free the invitor from liability when its contractor, through its agent, commits a wrongful act. The language in one of the cases in the above-cited annotation is particularly apt. These words, from *Adams* v. *F. W. Woolworth Co.* (1932), 144 Misc 27 (257 NY Supp 776, 782), have been frequently cited:

"This is not the case of a contractor doing his work negligently. Where negligence is the sole basis of the liability, the doctrine of respondeat superior has been held inapplicable to independent contracts. Negligence does not enter into the tort

of false arrest. * * * Immunity from vicarious liability would permit any store keeper to subject his customers to the hazards of an irresponsible detective agency without peril to himself. * * * The opportunities for gross injustice afforded by such a doctrine are too manifest to permit its incorporation into the jurisprudence of our state, without compelling reason."

Thus the first issue raised by Sears must be determined in the plaintiff's favor.

Next we discuss the issue raised by defendant Heidt's relative to the court's determination that the intentional torts were proved as a matter of law. Heidt's alleges that there was conflicting evidence as to the false arrest, and that therefore a jury question was presented. It notes that under the shoplifting statute,[5] any larceny is a felony. On this point, Heidt's is correct. Heidt's then states that a private citizen may arrest without a warrant where the person arrested has in fact committed a felony even though it was not committed in his presence.[6] Again, Heidt's is correct. However, Heidt's employs these rules of law to reach a conclusion which is fallacious. Heidt's says that since there was unobjected-to hearsay evidence to the effect that the saleslady said some merchandise was taken, this evidence of a felony should have gone to the jury, because if believed by the jury, there would have been no false arrest. Heidt's misinterprets the admission of the evidence here discussed. The evidence was not admitted as hearsay—to prove the truth of the matter asserted—but rather to prove the fact of an assertion—that the saleslady said something relevant to the cause at issue. There was no testimony that a theft had been committed— no evidence therefore of a felony, and the trial court

[5] CL 1948, § 750.360 (Stat Ann 1954 Rev § 28.592).
[6] CL 1948, § 764.16 (Stat Ann 1954 Rev § 28.875).

correctly found that there was a false arrest—an arrest without legal authority. There was, according to the undisputed evidence, an assault and battery. The trial court committed no error in so finding and charging. Heidt's assignment of error as to this issue is without merit.

Sears additionally contends that the court erred in refusing to direct a verdict for Sears on its cross-claim. Sears says, in effect: We had an oral contract with Heidt's, one of the provisions of which was that no guards furnished by the latter were to make apprehensions unless they witnessed the transaction themselves; the existence of this provision is not in dispute; and this contractual agreement was breached. Sears then says Heidt's did not properly instruct its servant in the method of performance and that the court erred in not holding Heidt's liable to Sears for injuries caused a third person through its negligence in this regard. Sears states that the court found Heidt's negligent as a matter of law and liable to the plaintiffs for failure to properly instruct its employees, but refused to apply the same rule as to Heidt's liability to Sears. It is Sears' contention that Heidt's was liable on either a contract or negligence theory. It further urges that if the court had determined that Sears was liable on a "loaned employee" theory, which it did not, then Sears, whose liability was predicated on passive negligence, would be entitled to indemnification from Heidt's—the actively negligent party. Sears' theory, as summarized above, raises several issues.

Sears says that the trial court determined that Heidt's was negligent as a matter of law as to Mrs. Nash, and erred in failing to hold Heidt's negligent —and hence liable—to Sears as well. The trial judge, in refusing to grant motions for a new trial or judgment notwithstanding the verdict some two months later, erroneously stated that he had deter-

mined that it was negligence as a matter of law for a private detective agency to employ uniformed guards and send them out without instructions. He was speaking, at that time, from his recollection of the instructions previously given. A rereading of the instructions shows that what the trial court said was that *if* the jury found that Keolian was a loaned employee—which question was correctly sent to the jury on proper instruction—then it might next decide that Heidt's was negligent in the selection and training of Keolian. Sears cannot gain reversal on this allegation.

Sears' other contention in the negligence area is that it was entitled to indemnity on the active-passive negligence theory as it was held liable without fault. We agree that the law is well settled that where one is held liable without fault, he is entitled to indemnity from the actively negligent party. And, we agree with Sears that active negligence on Sears' part cannot be based on the conduct of the Sears saleslady as this did not constitute participation in the arrest under Michigan law. See *Simpson* v. *Burton* (1950), 328 Mich 557; and *Howard* v. *Burton* (1953), 338 Mich 178. Sears was not held liable for the "active negligence" of Heidt's, but rather for the breach of a nondelegable duty to protect its invitees from an intentional tort by one held to have been acting for Sears at the time of the incident. Because of the manner in which the matter was submitted to the jury, we cannot now determine if Heidt's was held liable on the basis of liability without fault on the same theory as Sears, except as the provider of the service, or on the basis of negligence in the selection and training of the employee who caused the injury.

Sears' other contention involved in this issue deals with the contractual relationship between Sears and Heidt's. The court explained that the contract was

oral and the jury had to determine if one of the things agreed to was that the guard sent must be qualified, and if so, if that agreement was breached. Then the court explained that the other aspect of this contract to be determined is the "no arrest agreement." The court said, "the question is whether at the time the original contract or agreement was made between Mr. Heidt and Sears there was an understanding between them that this would not be done and if it was done it would be a breach or violation of the contract."

The testimony revealed that the parties to the contract discussed the fact that guards were not to apprehend for shoplifting if they did not see the transaction. However, it was never made clear by any witness that instructions to the guards relative to "no arrest" were a contractual provision. The issue of the existence of the contract and its specific terms was properly left in the province of the jury. We find no reversible error in the court's instructions on this point and we will not disturb the findings of the jury which inferentially must have found that the "no arrest" agreement was not part of the contract for services.

Sears' final issue on appeal asserts error in the court's failure to give an instruction requested by Sears to the effect that Heidt's had a duty of due care in selecting, training and instructing the guards it sent to Sears.

Sears' proposed instruction relative to this point was properly rejected by the court. It reads in part:

"If you find that Heidt's did not use due care and that this was the proximate cause of the incident with Mrs. Nash, then you may require Heidt's to reimburse Sears."

Heidt's responsibility, if any, to Sears could only be founded on contract. The issue, consequently,

was whether the kind of guard contracted for was provided. The instruction requested by Sears based on tort and the matter of proximate cause has no bearing on the breach or nonbreach of the contract.

We find that the question of the court allowing the jury to consider the amount paid to Heidt's by Sears for the service rendered as a factor in determining the qualifications of the guard contracted for was not properly preserved at trial, nor was the issue properly raised on appeal. While it may be true the trial court offered counsel a blanket exception to the charge, it was not accepted nor would it have been proper had it been so accepted.

For the reasons above stated in discussing Sears' appeal, there is no need for us to lengthen this opinion unduly by a discourse involving the merits of Heidt's cross-claim against Sears, nor its appeal. It suffices to add that Heidt's theory of the case was sufficiently presented to the jury and that the trial court properly rejected Heidt's requests to charge which were denied.

Affirmed. Costs to appellee.

BURNS, J., concurred with LESINSKI, C. J.

LEVIN, J. (*concurring in part and dissenting in part*). I agree with my colleagues in their affirmance of the jury's verdict in favor of plaintiffs Mary Lee Nash and Dan Nash against all 3 defendants, the store owner, Sears, Roebuck & Company, the guard service, Heidt's Protective Service, Inc., and the guard, Art Keolian. I would, however, grant Sears a new trial on its claim that Heidt's breached its contract with Sears when it supplied a guard alleged by Sears to have been unqualified; on that issue the trial judge erred in his charge to the jury and in refusing to give Sears' requested charge.

I.

Plaintiff Mary Lee Nash was wrongfully accused of shoplifting and assaulted by an unarmed guard, Keolian, employed by Heidt's who had contracted to provide guard service for Sears. My colleagues hold that a storekeeper has a nondelegable duty to protect his customers from attack by a guard who works on his premises without regard to whether such guard is the servant of an independent contractor engaged by the store owner to provide such service.[1]

I find no need in order to decide this case further to whittle away at what remains of the general rule which exempts the employer of an independent contractor from liability for physical harm caused by an act or omission of the contractor or his servants.[2]

---

[1] In *Adams* v. *F. W. Woolworth Company* (1932), 144 Misc 27 (257 NY Supp 776), cited in the majority opinion, the court held the store liable on 3 separate grounds: not only because, so it said, a nondelegable duty had been breached, but also because it found that an employee of the store participated with the detective in the arrest and that the detective was an agent of the store itself. Woolworth's nondelegable duty language was adopted by Ohio's intermediate appellate courts. *Szymanski* v. *The Great Atlantic & Pacific Tea Co.* (1947), 79 Ohio App 407 (35 Ohio Ops 177, 74 NE2d 205); *Zentko* v. *G. M. McKelvey Company* (1948), 88 NE2d 265. While the *Woolworth* case has been frequently cited, its nondelegable duty pronouncement was not the basis of decision in any of the other cases listed in the annotation cited in the majority opinion: Principal's liability for false arrest or imprisonment caused by agent or servant; 92 ALR 2d 15, subheading: Private detective employed by agency under contract with defendant, p 61.

In all the cases listed in the annotation, including *Woolworth's* and the 2 Ohio cases, servants of the department store actively participated with the detective in the commission of the acts which brought about plaintiffs' wrongful detention. See, *e.g.*, *W. T. Grant Company* v. *Owens* (1928), 149 Va 906 (141 SE 860), and *Schantz* v. *Sears, Roebuck & Company* (1934), 12 NJ Misc 689 (174 A 162), affirmed (1935), 115 NJ Law 174 (178 A 768). In *W. T. Grant Company* v. *Owens, supra*, the court found the detective was the special agent of the store owner.

[2] Restatement, Second, Torts, § 409. See Prosser, Law of Torts (3d ed), pp 480, 481, for a discussion of the general rule exempting an employer from liability for the torts of an independent contractor, and of the argument advanced by some that the injured party should be able to look to the whole "enterprise" and not only the particular

Keolian indisputably was a servant. Heidt's asserts he was Sears' servant and Sears asserts he was Heidt's servant. In my opinion he was the servant of both Heidt's and Sears. Heidt's was an independent contractor in the business of supplying guard and protective service for a number of different employers. Keolian was in the general employ of Heidt's, but that does not preclude a determination that he had become Sears' servant before the incident:

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement, Second, Agency, § 227.

And merely because the servant of one has become the servant of another does not necessarily mean he has ceased to be the former's servant. A person may be the servant of two masters "at one time as to one act if the service to one does not involve abandonment of the service to the other." Restatement, Second, Agency, § 226.

As to the specific act committed upon which liability is here asserted, apprehension of an alleged shoplifter, Keolian had received instructions from both Heidt's and Sears. He had been instructed by both Heidt's and Sears not to apprehend anyone unless he himself witnessed the shoplifting incident. He was thus acting under parallel directions respecting the performance of his duties; and in that regard neither Heidt's nor Sears can be said to have exercised more or less control than the other. Both failed in their efforts to avoid the kind of incident

contractor who under traditional analysis is responsible for his injury and the view that the large number of exceptions to the general rule of nonliability for the torts of an independent contractor "casts doubt upon the validity of the rule." Professors Harper and James demonstrate the general rule is sound in some applications and needs to be retained. 2 Harper and James, Law of Torts, § 26.11.

that occurred because Keolian failed to follow their mutual instructions. Keolian apprehended and assaulted Mrs. Nash as she was disappearing into a crowd on the street because he thought she was the one pointed out for shoplifting by a Sears employee. Both Heidt's and Sears sought to control Keolian; both failed. He was acting on the business of both, albeit in contravention of their instructions, when he stopped and assaulted Mrs. Nash.

Keolian began the day as Heidt's servant. He had just recently been hired by Heidt's, who selected and trained him. The day he assaulted Mrs. Nash was the first day he was assigned to work at Sears. Sears used guards inside the subject store on a part-time, intermittent basis. Sears had telephoned for a guard and Keolian was assigned. The length of his assignment at Sears was indefinite.[3]

Keolian was given detailed instructions by both Heidt's and Sears concerning the performance of his duties for Sears. Both retained a measure of control over him and the right to supervise, direct and discharge him from further service for Sears. One of Heidt's witnesses testified it had the right to pull a guard assigned to Sears off the job while he was at Sears and to replace him with someone else. Heidt's retained the right to continue to supervise Keolian to the extent it chose to do so. Keolian's services for Sears did not involve an abandonment of his service for Heidt's, and at the time of the incident Keolian had not ceased to be one of Heidt's servants.

Keolian worked side-by-side with and for Sears' employees. He was expected to respond to intelli-

---

[3] Based on the past history of dealings between Heidt's and Sears, it could have been anticipated that Keolian's assignment at Sears would last anywhere from less than a day or for a longer period up to perhaps 2 weeks, depending on Sears' reaction to his services and the continuity of its apparently ever-changing need for guard service.

gence received from other Sears' employees, even though he had been instructed not to arrest unless he himself witnessed a shoplifting incident. Keolian was on Sears' premises as an integral part of the complex of employees whose combined services make it possible to operate a modern department store in a major metropolis. He was Sears' servant and Sears together with Heidt's[4] was responsible for his torts, intentional[5] as well as negligent.

There being no probative evidence that Mrs. Nash had committed a crime, Keolian, who was a private citizen, not a peace officer, had no right to arrest her.[6] Mrs. Nash and her husband are entitled to recover their damages from both masters and the guard. Since the basis of the masters' liability is vicarious, depending on the fault of their servant, Keolian, rather than their own fault, there are no degrees of negligence to be weighed and neither master can seek indemnification from the other on the ground the other master was more negligent than he was.[7] As will appear, that does not preclude one master seeking from the other indemnification

---

[4] Whether one in the general employ of one master is also at the same time in the special employ of another master, *i.e.*, has become the dual servant of both masters, is ordinarily a question for the trier of fact. In this case the facts justify but one conclusion, namely, that Keolian was the servant of both Heidt's and Sears.

In the following dual employment cases, both the general and special employer were held liable as a matter of law: *Colorado & S. R. Co.* v. *Duffy Storage and Moving Company* (1961), 145 Colo 344 (361 P2d 144); *Gordon* v. *S. M. Byers Motor Car Co.* (1932), 309 Pa 453 (164 A 334).

In the following cases that result was declared by a jury's verdict: *Baur* v. *Calic* (1934), 166 Md 387 (171 A 713); *Jackson* v. *Blue* (CA 4, 1945), 152 F2d 67; *Armit* v. *Loveland* (CA 3, 1940), 115 F2d 308; *Vance Trucking Company, Inc.,* v. *Canal Insurance Company* (D SC, 1966), 249 F Supp 33; *Koontz* v. *Messer* (1935), 320 Pa 487 (181 A 792); *Grasberger* v. *Liebert & Obert, Inc.* (1939), 335 Pa 491 (6 A2d 925); *Siidekum* v. *Animal Rescue League of Pittsburgh* (1946), 353 Pa 408 (45 A2d 59).

[5] Prosser, Law of Torts (3d ed), p 476.

[6] CL 1948, § 764.16 (Stat Ann 1954 Rev § 28.875).

[7] They may, of course, seek contribution. CL 1948, § 600.2925 (Stat Ann 1962 Rev § 27A.2925).

for breach of a special duty undertaken and owing to the other.

The contract between Sears and Heidt's was oral. On the evidence presented the trial judge properly submitted to the jury the question whether Heidt's obligated itself to furnish guards who would make no apprehension unless they themselves witness a shoplifting incident, or whether it obligated itself only to instruct its guards to exercise such restraint. The jury by its verdict found that the contract did not oblige Heidt's to furnish guards who would in fact exercise such restraint; that verdict is not contrary to the preponderance of the evidence. So far at least, I agree with my colleagues regarding the result although not in opinion.

Our disagreement concerns the trial judge's charge and failure to charge concerning the obligation to furnish a qualified guard. The trial judge charged:

"This relationship between Sears and Heidt's is a contract, and one of the things for you to determine under the cross-claim of Sears is whether one of the things agreed to under that contract was whether a qualified guard was to be sent over."[8]

The trial judge erred in so charging the jury because it is an implied term of every contract to supply services that the services will be performed in a reasonably skillful manner.[9]

Sears was entitled to its requested instruction "that there was a duty on the part of Heidt's to use

---

[8] The judge also charged: "Now, on the question of this contract, let's assume for the moment that you were to find from the circumstances that there was an agreement that a qualified guard would be sent. The qualifications of the guard is a question for you to determine."

[9] Williston on Contracts (3d ed), § 1012C; *Italia Societa Per Azioni Di Navigazione* v. *Oregon Stevedoring Company, Inc.* (1964), 376 US 315, 318, 319 (84 S Ct 748, 11 L Ed 2d 732); *Curtis* v. *A. Garcia y Cia.* (CA 3, 1959), 272 F2d 235.

due care in selecting, training and instructing the guards it sent to Sears."[10]   As a corollary of the obligation to provide services in a reasonably skillful manner, a contractor who undertakes to supply servants to perform services for another impliedly agrees to use due care in selecting, training and instructing the servants it supplies for that purpose.[11] When Heidt's agreed to furnish a guard to Sears it impliedly obligated itself to furnish a properly selected, trained and instructed guard. Sears was entitled to a jury charge to that effect and it was error to leave to the jury for its decision the question whether that obligation was a term of the contract.

[10] The entire requested instruction reads: "I instruct you that there was a duty on the part of Heidt's to use due care in selecting, training and instructing the guards it sent to Sears. It is up to you to determine if Heidt's breached this duty to Sears. If you find that Heidt's did not use due care and that this was the proximate cause of the incident with Mrs. Nash, then you may require Heidt's to reimburse Sears for any amount which Sears may be required to pay Mr. or Mrs. Nash in damages for that incident."

The majority reject Sears' assignment of error predicated on the failure to give such charge, stating: "proximate cause [see requested charge quoted above] has no bearing on the breach or nonbreach of the contract." However, Professor Williston states that "a plaintiff can recover for breach of contract compensation for only such consequences as would follow such a breach in the usual course of events. It is generally said that the consequences must be 'proximate and natural' * * *." 5 Williston on Contracts. (Rev Ed), § 1344, p 3774. There is, as Professor Williston goes on to state, a difference between torts and contracts regarding what consequences are compensable.

Professor Corbin states that while the term "proximate causation" is used to describe the necessary nexus in contract as well as tort cases, the term "proximate" is "unsuited to the purpose of stating rules as to the recovery of damages. Its use should be abandoned, in both contract and tort cases. This is not to say, however, that the decisions in which it has been used in expressing legal doctrine can be disregarded." 5 Corbin on Contracts, § 997, p 21.

It is apparent that Sears' terminology was not so egregious as to preclude it from asserting the trial judge erred in his charge on this issue and in failing to give the requested charge.

[11] "An agent is subject to liability to the principal if, having a duty to appoint or to supervise other agents, he has violated his duty through lack of care or otherwise in the appointment or supervision, and harm thereby results to the principal in a foreseeable manner. He is also subject to liability if he directs, permits, or otherwise takes part in the improper conduct of other agents." Restatement, Second, Agency, § 405(2), p 251.

Because the jury was not so instructed, and indeed because it was erroneously instructed that it was for the jury to determine whether Heidt's obligated itself to furnish a qualified guard, Sears is entitled to a new trial on its cross-claim against Heidt's, which trial need not delay recovery by the Nashes of their judgment against all 3 parties.