171 So.2d 437 (1965)
Betty J. TUCKER, joined by her husband, Waters, B. Tucker, Appellants,
v.
AMERICAN EMPLOYERS' INSURANCE COMPANY, a foreign corporation authorized to do business in the State of Florida, Jack W. Harwood and Carl W. Geisler, Appellee.
No. 4723.
District Court of Appeal of Florida, Second District.
February 3, 1965.
J.D. Farish, Jr., of Farish & Farish, West Palm Beach, for appellants.
James M. Adams, of Jones, Adams, Paine & Foster, West Palm Beach, for appellees.
SHANNON, Judge.
The plaintiff, Betty J. Tucker, brought an action for personal injuries against the defendant following an automobile accident. The attorney for the defendant employed a private investigator to conduct a surveillance of the activities of the plaintiff, which included the taking of motion pictures, the purpose of which was to discover if there was any inconsistency between the injuries which she alleged and her actual physical activity. The plaintiff then filed a complaint alleging that the defendant wilfully and maliciously caused the plaintiff to be "openly followed and shadowed" in such a manner as to make the plaintiff and the general public aware that she was being followed, and causing her to suffer certain injuries. The defendant filed a motion for summary judgment, attaching an affidavit in which the manager of the investigating agency stated that the following was not open, but was done in secret. The plaintiff filed an opposing affidavit to the effect that the following was done openly. On the basis of these affidavits and the pleadings the lower court entered a summary judgment in favor *438 of the defendant. The judgment stated that the court was relying on the case of Forster v. Manchester, 1963, 410 Pa. 192, 189 A.2d 147, which we shall discuss later in this opinion. The plaintiff has appealed on the basis that a material issue of fact was raised as to whether the following was open.
It is well established that this state recognizes the tort of invasion of the right of privacy. See Jacova v. Southern Radio and Television Co., Fla. 1955, 83 So.2d 34; Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430; and cases cited in 32 Fla.Jur., Torts, § 9 (Supplement). The question of whether the investigation of a claimant in a personal injury case can give rise to this tort has not been answered in Florida.
In considering this question it must be borne in mind that it is not uncommon for defendants to investigate plaintiffs in order to determine the validity of a claim in a personal injury case. Because of the public interest in exposing fraudulent claims, a plaintiff must expect that a reasonable investigation will be made subsequent to the filing of a claim. However, there should be certain limits as to how the investigation is conducted, because there is also a social utility in not permitting a defendant to harass or intimidate a plaintiff into settling a claim on less favorable terms than those which he would voluntarily accept.
In Forster v. Manchester, supra, which was cited in the summary judgment, the Pennsylvania Supreme Court held that the claimant's right of privacy had not been invaded. In that personal injury case two investigators were to report on the everyday activities and movements of the plaintiff and to obtain motion pictures. They followed her in her car, trying to remain one block behind. She observed them several times, noticed the camera they had, and became somewhat disturbed. The court stated that the few times that the plaintiff observed the investigators were purely inadvertent, that the investigators did not intentionally expose themselves, and on these facts there could be no liability.
The appellant-plaintiff cites Pinkerton National Detective Agency, Inc. v. Stevens, 1963, 108 Ga. App. 159, 132 S.E.2d 119, in which the Georgia Court of Appeals held that the plaintiff could recover damages for invasion of the right of privacy. The facts of that case, as stated in the opinion, were:
"* * * The detectives would peep through the hedge adjoining plaintiff's home, slink around her house, snoop and eavesdrop upon her activities therein, park near the house where they could watch her through a hole in the hedge, and later park across the street from early morning until late at night, follow her, especially at night, in automobiles staying only a few car lengths behind. In particular, they drove past the house several times on several days before April 13, 1957, and almost every day toward the end of April; parked different colored automobiles beyond the hedge and peeped through the hedge several times on several days after April 13, and almost every day towards the end of April, during May and June, July 2, six occasions between July 25 and August 13, August 20, and two occasions between August 20 and the first part of September; came on her premises at night near her windows and ran on being observed several nights shortly after May 9 and shortly after June 6, and between July 2 and 10; peeped in the windows of her house several nights shortly after May 9, shortly after June 6, and on July 2, 11, and 12; eavesdropped and listened in on conversations inside the house on July 2 and 11, several nights shortly after June 6, and June 11; went into the woods behind her house on July 2, snooped behind the hedge, eavesdropped, and peeped in, moved about at night in the woods and on the premises around the house several nights *439 between July 2 and 10 and on July 10 in the daytime; on July 2 cut a hole in the hedge alongside the street in order to peep into the windows; came to the door on June 27 pretending to be television salesmen and on July 12 pretending to have business with her; followed her closely in an automobile on given dates, into stores and public places; on July 10 followed her into a named restaurant and were waiting outside a restroom door when she came out, and so on. On one occasion the plaintiff returned home at night was so closely followed that she ran into the house in panic, hit a piece of furniture, and knocked herself unconscious. * * *"
The court concluded that:
"* * * The conduct of the defendants in shadowing, snooping, spying and eavesdropping upon plaintiff was done in a vicious and malicious manner not reasonably limited and designed to obtain information needed for the defense of plaintiff's lawsuit against Bell but deliberately in a way calculated to frighten and torment her. * * *"
In the case on review the record does not sufficiently show the facts of the investigation. The plaintiff claims the following was open, the meaning of which is not at all clear. The fact that the investigator inadvertently exposed himself to the subject is not in itself enough to render the investigator liable. The Forster case held to this effect and we think that decision was well reasoned. It is not at this time necessary for us to pass on any question except whether there was an issue of fact which would preclude the entry of a summary judgment. The only evidence before the court was an affidavit of the plaintiff stating that the following was open, and the opposing affidavit that it was done in secret. If at trial the plaintiff can show no more than is reflected by the record in its present state, she would certainly have difficulty in overcoming a motion for a directed verdict. However, the record does raise a material question of fact and thus it was error to enter the summary judgment. The burden was on the defendant to prove there was no genuine issue of fact and the mere statement that the surveillance was done in secret does not sustain this burden, in view of the plaintiff's affidavit to the contrary.
Reversed.
ALLEN, Acting C.J., and SMITH, D.C., Associate Judge, concur.