[Civ. No. 40771. Second Dist., Div. Four. July 25, 1973.]

VERONICA M. NOBLE, Plaintiff and Appellant, v.
SEARS, ROEBUCK AND COMPANY, et al.,
Defendants and Respondents.

## COUNSEL

Renzi & Kilbride and Fred Kilbride for Plaintiff and Appellant.

H. Warren Siegel and Jones, McCue, Hall & Genard for Defendants and Respondents.

## OPINION

**KINGSLEY, J.**—Plaintiff Noble sued Sears, Roebuck and Co., Sears' attorneys, Sam Pruitt Investigations, and certain persons working for Sam Pruitt Investigations, charging 10 counts. The 10 counts alleged: Trespass; battery; fraud; negligently caused physical, mental and emotional injuries; invasion of attorney-client relationship; invasion of privacy; negligent entrustment of agents (two counts); conspiracy; violation of statutory duties; and violation of attorneys' ethics. We are here concerned only with the counts which charged respondents Sears and its attorneys, namely the fifth, sixth and seventh causes of action.[1] Respondents' demurrers to those

---

[1] The ninth count, which involved the present respondents, was voluntarily dismissed by plaintiff.

causes of action were sustained and plaintiff has appealed from the resulting order of dismissal.

## I

Preliminarily, we note that the respondents ask us to take judicial notice, in support of the order below, of certain statements made by plaintiff in depositions taken during the time the pleadings were being settled. They rely on the language in *Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504 [85 Cal.Rptr. 866], and on authorities cited in that case. We do not think it necessary, in this opinion, to explore the extent to which judicial notice of facts *de hors* a pleading may be resorted to in support of a demurrer. The deposition testimony to which counsel call our attention is not necessarily such as to show that plaintiff's entire complaint is false; it does show some inconsistency with it. Accordingly we proceed to consider the allegations, as pleaded, to determine whether, if proved at trial, they amount to causes of action.

## II

We set out certain facts alleged which form the background for the three causes of action in the complaint which are before us on this appeal.

Mrs. Nobel was the plaintiff in an action against Sears for personal injuries allegedly caused while she was shopping in a Sears store. The attorney defendants were employed by Sears to defend that action. Defendant Pruitt, an investigator, was hired to assist in preparing the defense. The attorneys desired to take the deposition of a man named Bohm, who had accompanied plaintiff on her shopping trip. That effort was frustrated because plaintiff either could not procure or did not have an address for Bohm. In an effort to secure the address from plaintiff, an employee of Pruitt, named Lemon, gained admittance to a hospital room where plaintiff was confined and, by deception, secured the address. It is that alleged invasion, and Lemon's conduct while in the room, which form the basis for plaintiff's claim of injury.

## III

 The briefs discuss the liability of a client for conduct of so-called "house counsel." The complaint before us alleges that Pruitt and Lemon were hired by both Sears and its attorneys and that both the attorneys and Sears retained the right to control the activities of Pruitt and Pruitt's employees. Consequently, on the record before us, we need not reach the question of any vicarious liability on the part of Sears for the attorneys'

conduct. Insofar as the conduct of Pruitt and Lemon is concerned, the complaint alleges conduct by Sears itself.[2]

## IV

■ Plaintiff's first argument is that the intrusion into the attorney-client relationship between plaintiff and her attorneys, as alleged in plaintiff's fifth cause of action, is a tort, for which the client may recover damages.

Rule 12 of the Rules of Professional Conduct provides: "A member of the State Bar shall not communicate with a party represented by counsel upon a subject of controversy, in the absence and without the consent of such counsel. This rule shall not apply to communications with a public officer, board, committee or body." Plaintiff argues that violations of rule 12 by attorneys render such attorneys liable in damages. There is no authority for plaintiff's contention. A violation of rule 12 subjects an attorney to disciplinary proceedings (*Abeles* v. *State Bar* (1973) 9 Cal.3d 603 [108 Cal.Rptr. 359, 510 P.2d 719]; *Mitton* v. *State Bar* (1969) 71 Cal.2d 525, 534 [78 Cal.Rptr. 649, 455 P.2d 753]); the *Mitton* case is not authority for the proposition that a violation of rule 12 subjects an attorney to liability in damages.

Plaintiff cites the case of *Souder* v. *Pendleton Detectives* (La.App. 1956) 88 So.2d 716, 718, for the proposition that an attorney who is subject to disciplinary action by the State Bar also may be held liable therefor in damages. The Louisana court remarked at page 718: "Now, according to the allegations of the petition, there was certainly raised such facts as would indicate a possibility of criminal prosecution [investigators peered into the windows of plaintiff's home]. It certainly would follow that, if a possible crime was committed, a suit in civil damages would be present, provided that damages could be proved." The quoted language in *Souder* has no application to the facts at bench. In *Souder*, there was a violation of the state's "Peeping Tom statute," making defendant subject to criminal prose-

---

[2]The allegations concerning the status of the defendant attorneys, contained in paragraphs III, IV and V of the first cause of action (incorporated by reference in the fifth, sixth and seventh causes of action) do not seem to us to allege any relation between those defendants and Sears differing from the usual relationship of attorney and client. At this stage we cannot know what evidence there may be to show a different relationship or whether the relationship ultimately shown would make applicable, by analogy, the rule announced in *Rannard* v. *Lockheed Aircraft Corp.* (1945) 26 Cal.2d 149 [157 P.2d 1].

Each count of the complaint incorporates, in full, each prior count. Whether this renders the complaint specially demurrable under Code of Civil Procedure, sections 430.10, subdivision (e), and 425.20, we need not determine, as the problem is not raised.

cution and possibly to an action for damages. That case is not authority for the proposition that a lawyer who is subject to disciplinary action by the State Bar is thereby made subject to a civil action for damages, whether or not an established tort has been committed by the lawyer.

The dictum in the case of *Harmatz* v. *Allstate Insurance Company* (S.D.N.Y. 1959) 170 F.Supp. 511, 512,[3] is insufficient reason for this court to create a new tort. As plaintiff herself admits, that dictum is substantially isolated. Accordingly, the demurrer to the fifth cause of action was properly sustained.[4]

## V

Plaintiff argues that an "unreasonably intrusive" investigation, which plaintiff has alleged in her sixth cause of action, is a tort for which damages are recoverable. We agree. Various courts have recognized that an intrusive investigation may give rise to a cause of action for damages. The Florida Supreme Court recognized that an investigation done by trailing and shadowing a claimant could amount to an actionable invasion of privacy, if it is unreasonably intrusive. (*Tucker* v. *American Employers' Insurance Company* (Fla.App. 1965) 171 So.2d 437 [13 A.L.R.3d 1020].)

A Georgia court also has held that an investigation done in a frightening manner may provide a cause of action against a detective agency. (*Pinkerton National Detective Agency, Inc.* v. *Stevens* (1963) 108 Ga.App. 159[5] [132 S.E.2d 119].) The Louisiana court in *Souder* v. *Pendleton Detectives, supra,* 88 So.2d 716, held that an investigation by detectives hired by an insurance company must be conducted within legal bounds and failure to investigate in a proper manner may amount to a cause of action for breach of privacy.

In California, the Supreme Court has recognized, in dicta, that a private investigation may give rise to a cause of action for damages for invasion of the right to privacy. The court said in *Redner* v. *Workmen's Comp.*

---

[3] That dictum is: "The penalty for violations of this rule [the New York version of California's rule against unauthorized contact by attorney of one party with the adverse party when the adverse party is represented by counsel] is not a personal action for damages by the aggrieved attorney. *If any damages were suffered as a result of the conduct of the defendant they may well have been damages of Maria,* but no such damages are alleged in the complaint." (Italics supplied.)

[4] Since no cause of action is stated against the attorneys, we do not reach the issue of vicarious liability of Sears under the fifth cause of action.

[5] In *Forster* v. *Manchester* (1963) 410 Pa. 192 [189 A.2d 147], the Pennsylvania court recognized that improper surveillance may amount to a tort but held that the particular conduct therein involved did not amount to a tort.

*Appeals Bd.* (1971) 5 Cal.3d 83, footnote 13 on page 94 [95 Cal.Rptr. 447, 485 P.2d 799]: "In such cases, the private investigators may well make an intrusion into the individual's right of privacy which would be objectionable or offensive to the reasonable man. (See Prosser, *Privacy* (1960) 48 Cal.L.Rev. 383, 390-391.) Courts have permitted such an individual to maintain an action for damages against the intruders. (See, e.g., Shernoff, *The Demise of the Sub Rosa Investigation,* 45 State Bar J. 853; see also *Wayne* v. *Bureau of Private Investigators & Adjusters* (1962) 201 Cal.App.2d 427, 433-436 [20 Cal.Rptr. 194].)"

Therefore, we hold that an unreasonably intrusive investigation may violate a plaintiff's right to privacy. The theory of plaintiff's complaint, as set forth in the first cause of action (incorporated by reference into the sixth) is that she had, at least as against Sears, Pruitt, Lemon and respondent attorneys, an exclusive right of occupancy of her hospital room.[6] Assuming that that theory is sustained by proof, the other conduct alleged against Lemon would seem to fall within the concept of unreasonably intrusive investigation.

Insofar as the sixth cause of action is concerned, plaintiff's case involves a second step, namely that, assuming that Pruitt and Lemon are liable for the allegedly unlawful invasion of plaintiff's room and for Lemon's conduct thereafter, the attorneys and Sears, who hired Pruitt and Pruitt's staff, are liable for the torts of those investigators.

Plaintiff relies on *Martin* v. *Leatham* (1937) 22 Cal.App.2d 442 [71 P.2d 336], in which the proprietor of a skating rink was held liable for the torts of an employee of a detective service which had been retained to protect the property. In *Martin* the evidence showed that the alleged actor had acted under orders directly given to him by the rink owner's wife. In the case at bench, the complaint alleges, in paragraph IV of the sixth cause of action, "that each and every of the wrongful and intrusive acts complained of herein were committed under the instructions and prior approval, express or implied, of" Sears and its attorneys, which allegation would seem to bring the sixth count within the *Martin* ruling. But we must discuss the problem further.

Plaintiff also argues that Sears and its attorneys are liable because, where a corporation undertakes an activity involving possible danger to the public under a license or franchise granted by public authorities, these liabilities may not be evaded by delegating performance to an independent

---

[6]The complaint speaks in terms of "possession" and of "trespass"; we rephrase the concept in our text in less technical terms.

contractor. (*Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594 [110 P.2d 1044].) Plaintiff points out that a common carrier's duties are non-delegable (*Eli* v. *Murphy* (1952) 39 Cal.2d 598 [248 P.2d 756]), and that the statutory duty of motorists to maintain their brakes is nondelegable. (*Maloney* v. *Rath* (1968) 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1].) None of these cases, or the theory behind them, has any application to the practice of law or the business of private investigations. These latter two activities, when performed properly, cannot be considered inherently hazardous to the public by their very nature, nor do we regard them as so "dangerous" as to be nondelegable. It is clear that both common carriers and drivers of automobiles may present serious dangers to the public safety and that special rules may be developed in order to protect the public from physical danger. If we are to find liability on the part of hirers of private investigators, it must be on a theory other than the nondelegability of dangerous activities.

Different jurisdictions have examined problems similar to the one before this court, and they have reached a variety of conclusions. A brief examination of the case law elsewhere reveals that a hirer is not liable for the torts of security personnel supplied by an independent agency where the hirer did not exercise control (see *Clinchfield Coal Corporation* v. *Redd* (1918) 123 Va. 420 [96 S.E. 836]), although where the hirer of the detective agency does exercise control, the hirer may be liable (see *Clinchfield Coal Corporation* v. *Redd, supra; Adams* v. *F. W. Woolworth Co.* (1932) 144 Misc. 27 [257 N.Y.S. 776].) However, even though hirers of an independent security or protective agency have generally been held not liable for *negligent* torts of agency personnel, where the hirer did not exercise control over them, hirers have been held liable for the *intentional* torts of the agency's personnel committed, in the scope of the agency's employment, against the hirer's invitees. (See *Nash* v. *Sears, Roebuck and Co.* (1968) 12 Mich.App. 553 [163 N.W.2d 471], revd. on other grounds in 383 Mich. 136 [174 N.W.2d 818], also, see, *Halliburton-Abbott Co.* v. *Hodge* (1935) 172 Okla. 175 [44 P.2d 122].)

Other courts have found that the hirer of a detective bureau agency is not liable for the intentional tort of the detective agency, on the theory that the relationship was that of independent contractor and employer and there was an absence of right to control. (*Inscoe* v. *Globe Jewelry Co.* (1931) 200 N.C. 580 [157 S.E. 794].)

Some courts distinguish the use of detective personnel, on a temporary contract investigating a single event, from security personnel hired for the general protection of property, finding that the hirer is not liable for inten-

tional torts, such as false arrest, committed by the personnel of the investigatory agency (see discussion in *Milton* v. *Missouri Pac. Ry. Co.* (1906) 193 Mo. 46 [91 S.W. 949, 952]),[7] focusing on the fact that such an intentional tort is outside the scope of the limited employment.

In California there is little law directly on the subject before us. Respondent Sears' cases, *Maggi* v. *Pompa* (1930) 105 Cal.App. 496 [287 P. 982], and *St. John* v. *Reid* (1936) 17 Cal.App.2d 5 [61 P.2d 363], are of little assistance since in those cases the special officers were in performance of their duties as quasi-public officials, appointed by city authority. (Compare: *McChristian* v. *Popkin* (1946) 75 Cal.App.2d 249, 255-257 [171 P.2d 85].)

Our research has disclosed some rather weak authority on the question before us. In *Weir* v. *Continental Oil Co.* (1935) 5 Cal.App.2d 714 [43 P.2d 375], the court held an oil company liable for an intentional tort, namely, unlawful imprisonment, participated in by employees of a private detective agency that was hired by the company. Without any discussion as to whether the private detective was an independent contractor or agent, and without any discussion as to possible differences in liability where the agency is hired to protect rather than investigate, the court held that there was sufficient evidence to support the jury's finding that the company was liable.

In *Alterauge* v. *Los Angeles Turf Club* (1950) 97 Cal.App.2d 735 [218 P.2d 802], the appellate court upheld an award of compensatory damages against a turf club and a private security agency, hired by the club to police its grounds, for intentional torts, i.e.: battery and "wrongful arrest," committed by an employee of the security agency. Again, the court did not discuss an agency theory.

The case of *Draper* v. *Hellman Com. T. & S. Bank* (1928) 203 Cal. 26 [263 P. 240], is perhaps closest in point. Allegedly libelous statements were made in a telegram sent by a private detective agency, hired by a bank to locate a former employee for questioning about misappropriated funds. Although the hiring bank did request the agency to send the telegram, it in no way authorized the use of libelous language. Without making any distinction between an agency hired to investigate and an agency hired to protect, the court held that the bank could not avoid liability by claiming that the detective agency acted as an independent contractor. The court

---

[7]In *Milton* the detective was not acting in the scope of his employment, and this was the determinative factor in the court's decision. However, there is some discussion distinguishing personnel hired for an investigation from personnel hired to protect property.

held the principal liable for the torts of its agent committed in the scope of employment.

■ Thus it appears that in California the hirer of a detective agency for either a single investigation or for the protection of property, may be liable for the intentional torts of employees of the private detective agency committed in the course of employment.[8]

Thus, plaintiff has stated a cause of action against the hirer for the intentional tort of the private detective agency. Whether or not the tort. was committed in the scope of employment is a question of fact not to be decided on demurrer. What we have said above is consistent with the related rule that the attorney at law who, as principal, employs other attorneys to collect a judgment and who authorized them to levy on property owned by the debtor may be held responsible for the acts of the agent attorneys within the scope of their authority. (*Gudger* v. *Manton* (1943) 21 Cal.2d 537 [134 P.2d 217], disapproved on another point in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405].) The analogy between one who collects on a judgment and one who is a private investigator is clear. The demurrer to the sixth cause of action should not have been sustained.

## VI

The seventh cause of action appears to allege liability on two theories: (1) negligent supervision, and (2) negligent entrustment.

Plaintiff app₂ ᐧs to be attempting to allege a duty on the part of Sears and its attorneys to supervise their agents, and that failure to exercise supervision constitutes negligence. ■ Although a principal may be liable for the torts of an agent committed in the scope of authority (*Turner* v. *N. B. & M. R. R. Co.* (1868) 34 Cal. 594, 599), that theory of vicarious liability is not based on the fact that the principal is negligent if he fails to supervise the agent. The principal is held liable as a matter of public policy, in order to promote safety for third persons. The theory of liability is that the principal is holding out the agent as competent and fit to be trusted, and thereby, in effect, warranting good conduct and fidelity of the agent. (*Bk. of Cal.* v. *W. U. Tel. Co.* (1877) 52 Cal. 280, 288.)

The Restatement of Agency (2d ed. 1958) section 213, states: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . .

---

[8]We do not consider herein the liability or nonliability of the hirer for negligent torts of the employees of a detective agency.

(c) in the supervision of the activity; . . ." As will be noted, the liability thus stated attaches only where the supervision (or lack thereof) is negligent or reckless. We are cited to no authority, nor have we found any authority basing liability on lack of, or on inadequate, supervision, in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised. As so limited, the concept adds little, if anything, to the concept of liability for wrongful or negligent entrustment, which we now discuss.

■ Plaintiff alleges negligence in choosing the Pruitt detective agency to do its investigation. Under this allegation, whether defendants were negligent in choosing Pruitt is a matter of fact to be determined, based on the evidence. The fact that Pruitt was a licensed detective agency is one fact to be considered in determining whether the lawyers and Sears were negligent in their choice, but we cannot say on the record before us that, as a matter of law, this was sufficient to show that Sears and its attorneys exercised reasonable care in their choice.

The demurrer to the seventh cause of action should not have been sustained.

The judgment (order of dismissal) is affirmed as to the fifth cause of action; it is reversed as to the sixth and seventh causes of action. Appellant shall recover her costs in this court.

Jefferson, Acting P. J., and Dunn, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 19, 1973.