Terry Cove North, Inc., plaintiff, appeals from a summary judgment granted in favor of defendants, Thomas Marr, Maury Friedlander, and Marr Friedlander, P.C.
This case is a malpractice action against two attorneys. The pertinent facts are as follows: In 1978 Terry Cove North incorporated for the purpose of purchasing and developing 220 acres of land in the Gulf Shores area. In 1979 Terry Cove retained Marr and Friedlander as its attorneys. In attempting to develop its land, Terry Cove experienced problems in procuring connections on sewer lines leading to a sewage treatment facility. While representing Terry Cove, Marr and Friedlander negotiated with Orange Beach Authority and with the Town of Gulf Shores in order to purchase sewer line connections for Terry Cove. Neither Orange Beach nor Gulf Shores agreed to provide sewer service on terms acceptable to Terry Cove. Consequently, Terry Cove, Marr, Friedlander, and other developers began negotiations to construct a privately owned sewage treatment facility. Because of the high costs involved in building a facility, Terry Cove and the other developers refused an offer to own and to operate a sewage facility themselves. However, Marr and Friedlander agreed to build, own, and operate such a facility and formed the Baldwin County Sewer Authority (BCSA) to accomplish this goal. BCSA obtained a permit to build a sewage plant with a capacity for 3600 units and sold available units on its sewage lines to developers, including Terry Cove. On November 20, 1980, BCSA and Terry Cove executed *Page 23 
a contract in which BCSA agreed to sell 450 units to Terry Cove. Terry Cove received these 450 units in accordance with the contract. On the same day, Terry Cove's president signed a document drafted by Marr and Friedlander that discussed the meaning of Disciplinary Rule 5-104(A) of the Code of Professional Responsibility with respect to the business arrangement between BCSA and Terry Cove. The document advised Terry Cove of the conflicting interests that could potentially arise between Marr and Friedlander and Terry Cove due to the fact that Marr and Friedlander were simultaneously acting both as lawyers for Terry Cove and as owners and operators of BCSA. The document further advised Terry Cove to seek independent counsel and to refrain from using the professional judgment of Marr and Friedlander as to the business transaction between Terry Cove and BCSA.
After the contract was executed, Terry Cove learned that BCSA had a greater capacity than 3600 units; and, in 1983, Terry Cove requested additional sewer units. BCSA denied Terry Cove's request and contracted with other developers to sell certificates of use for the sewage treatment plant.
In 1985, Terry Cove filed a complaint against the law firm of Marr and Friedlander and against Marr and Friedlander individually, alleging breach of fiduciary duty and breach of duty imposed by Disciplinary Rule 5-104. An amendment added two additional counts, one for breach of Disciplinary Rule 4-101 and one for fraud. The trial court granted summary judgment in favor of defendants.
Terry Cove appeals from the summary judgment as to its two counts premised on alleged violations of Disciplinary Rules 4-101 and 5-104(A), arguing that a Disciplinary Rule under the Code of Professional Responsibility establishes a duty that a lawyer owes his client, the breach of which creates a private cause of action. Specifically, Terry Cove contends that the defendants' alleged breach of Disciplinary Rule 5-104, which prohibits a lawyer from entering into a business transaction with a client if they have competing interests, unless the client consents after full disclosure, and their alleged breach of Disciplinary Rule 4-101(B)(2), which prohibits a lawyer from using confidential information gained from the attorney-client relationship to the detriment of the client, render summary judgment inappropriate.
Marr and Friedlander, on the other hand, argue that a breach of the Disciplinary Rules of the Code of Professional Responsibility does not provide the basis for a private, civil cause of action. We agree and affirm.
The Alabama courts, state and federal, have never addressed the issue of whether a breach of a Disciplinary Rule under the Code of Professional Responsibility provides the basis for a private cause of action. However, courts in other jurisdictions which have confronted this issue have expressly held that a violation of a Disciplinary Rule does not create a private cause of action. Tew v. Arky, Freed, Stearns, Watson, Greer,Weaver, Harris, P.A., 655 F. Supp. 1573 (S.D.Fla. 1987); Bickelv. Mackie, 447 F. Supp. 1376 (N.D.Iowa 1978), aff'd mem., 590 F.2d 341 (8th Cir. 1978); Noble v. Sears, Roebuck Co.,33 Cal.App.3d 654, 109 Cal.Rptr. 269 (1973); Spencer v. Burglass,337 So.2d 596 (La.App. 1976), writ denied, 340 So.2d 990 (La. 1977); Martin v. Trevino, 578 S.W.2d 763 (Tex.Civ.App. 1978);Bob Godfrey Pontiac, Inc. v. Roloff, 291 Or. 318, 630 P.2d 840
(1981); Tingle v. Arnold, Cate, Allen, 129 Ga. App. 134,199 S.E.2d 260 (1973); Brainard v. Brown, 91 A.D.2d 287,458 N.Y.S.2d 735 (1983). We find these cases to be dispositive in deciding the case at bar. The Code of Professional Responsibility is designed not to create a private cause of action for infractions of disciplinary rules, but to establish a remedy solely disciplinary in nature. Bob Godfrey Pontiac,Inc. v. Roloff, supra.
Moreover, Alabama's Code of Professional Responsibility, which is patterned primarily after the ABA Model Code of Professional Responsibility, limits the remedies for violations of Disciplinary Rules to disciplinary measures. The Model Code established standards of professional conduct, some of which are aspirational in character, such as the Ethical Considerations, and some of which are mandatory in character, *Page 24 
such as the Disciplinary Rules. Model Code of Professional Responsibility-Preliminary Statement (1969). In its Preliminary Statement, the Model Code states that the purpose behind the Disciplinary Rules is to prescribe a "minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." The Model Code continues by disclaiming any intention of prescribing disciplinary procedures and penalties or of undertaking "to define standards for civil liability of lawyers for professional conduct." Alabama's Code of Professional Responsibility also states that the Disciplinary Rules establish a minimum level of conduct and that breaches of Disciplinary Rules subject an attorney to discipline, but, unlike the Model Code, it establishes procedures governing disciplinary actions and penalties for violations. Code of Professional Responsibility of the Alabama State Bar, Preliminary Statement (1974). Rule 3 of the Rules of Disciplinary Enforcement enumerates the following types of discipline: 1) disbarment, 2) suspension for a fixed period of time, 3) temporary suspension, 4) public censure, 5) private reprimand, and 6) private informal admonition. Rule 3, as well as the entire section entitled "Rules of Disciplinary Enforcement," does not provide for a civil cause of action for breaches of disciplinary rules. The sole remedy is the imposition of disciplinary measures. Like the Model Code, Alabama's Code of Professional Responsibility does not set out standards for civil liability. Therefore, in light of the limited scope of the Disciplinary Rules of the Code of Professional Responsibility, Terry Cove's argument is untenable.
For the foregoing reasons, we hold that an alleged violation of a Disciplinary Rule of the Code of Professional Responsibility cannot, independently, serve as a legal basis of a civil action for money damages.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and STEAGALL, JJ., concur.