Victor B. **Castro**,
Plaintiff/Appellant,
v.
**Hotel Nikko Saipan, Inc.**,
Defendant/Appellee.
Appeal No. 94-005
Civil Action No. 92-1029
April 24, 1995

Submitted on Briefs November 30, 1994[*]

Counsel for appellant: Jay H. Sorensen, Saipan.

Counsel for appellee: John Osborne, Saipan (Carl-smith, Ball, Wichman, Murray, Case & Ichiki).

BEFORE: DELA CRUZ, Chief Justice, ATALIG, Justice, and BELLAS, Special Judge.

---

[*] The panel unanimously agrees that this case is appropriate for submission without oral argument. *See* Com. R. App. P. 34(a).

270

ATALIG, Justice:

Victor B. Castro ("Castro"), appeals from an order granting summary judgment in favor of the defendant, Hotel Nikko Saipan, Inc. ("Nikko"). The trial court concluded that security guards involved in a scuffle with Castro at the Nikko Hotel were not Nikko's employees or borrowed servants. It further concluded that the guard's employer, FAMCO Security Services ("FAMCO"), was an independent contractor of Nikko, and that none of the specified exceptions to nonliability for the acts of an independent contractor, or its employees, were applicable. We hold that the court did not err in granting summary judgment in favor of Nikko and affirm.

## ISSUES PRESENTED AND STANDARD OF REVIEW

Castro raises the following issues for our review:

I. Whether Castro presented a genuine issue of material fact regarding the status of the security guards as "servants" of Nikko rather than as employees of an "independent contractor";

II. Whether Nikko owes a non-delegable duty to provide responsible security guards to visitors, invitees and members of the general public, giving rise to liability for the acts of the guards;

III. Whether Nikko may be liable for the alleged intentional torts of assault and battery of the guards; and

IV. Whether the participation of Nikko's front desk manager in the scuffle either raises material questions of fact or implicates liability of Nikko under the doctrine of respondeat superior.

▆ Because these issues are raised with respect to the grant of summary judgment, our review is de novo. *See Riley v. Public Sch. Sys.*, 4 N.M.I. 85, 87 (1994). We review the evidence in the light most favorable to the nonmoving party, *id.*, and affirm if "there was no genuine issue of material fact and . . . the trial court correctly applied the substantive law." *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 1991, Castro entered the Nikko Hotel premises and attempted to use the hotel elevator. He wanted to see the view from the top of the hotel. Nikko limits the use of the elevator to in-house guests. This policy was posted, in English, on a sign next to the elevators. Castro, who reads English, saw the sign.[1]

Castro was approached by a security guard, Charles Tobia ("Tobia"), and two other security guards. All three guards were employed by FAMCO, the company providing security services for Nikko. Castro was told politely and in a non-threatening manner, by the guards, that he could not use the elevator and that he would have to leave the premises.[2] Castro refused. What followed is the incident from which this dispute arises. Castro, the guards, and Terry Moss ("Moss"), Nikko's front desk manager, engaged in a scuffle, after which Castro was handcuffed.

Subsequently, on February 7, 1992, Nikko and FAMCO executed a written contract for FAMCO to provide security services for Nikko. The duration of the contract was from February 1, 1992, through January 31, 1993.[3] On July 18, 1992, FAMCO and Nikko signed and approved certain security job descriptions.

On August 24, 1992, Castro filed a complaint for damages against Nikko. He alleged that he was wrestled to the ground by the guards and struck on the head with a baton, resulting in a contusion. Further, he asserted that he was held to the ground while the guards handcuffed him.

Castro set forth two alternative claims under which Nikko should be held liable for the actions of the guards. First, he alleged that Nikko has a personal and non-delegable duty to provide responsible security guards owed to customers, invitees and members of the general public. Second, he alleged that Nikko exercised control and direction over the actions of the guards, thus creating the relationship of master/servant between Nikko and the guards.[4]

On September 28, 1992, Nikko filed an answer denying that: (1) Castro was an invitee, (2) Nikko had a personal and non-delegable duty toward Castro, as the hirer of security guards, and (3) it exercised control over the guards. Nikko moved for summary judgment on

---

[1] Plaintiff's Deposition at 33 (Apr. 1, 1993), *Castro v. Hotel Nikko Saipan, Inc.*, Civ. No. 92-1029 (N.M.I. Super. Ct. transcribed Apr. 10, 1993).

[2] Plaintiff's Deposition, *supra* note 1, at 36.

[3] *See* Contract for Security Services at 2 *in* Appellant's Excerpts of Record at Exhibit 43.

[4] In his complaint, Castro alleged that the guards "without reasonable cause or justification, unlawfully, wantonly, wilfully, recklessly and with malice did assault and attack plaintiff, and did with great force and violence strike, kick and batter plaintiff." Complaint and Demand for Jury at 2, *Castro, supra* note 1 (filed Aug. 24, 1992).

271

January 14, 1994. The motion was granted, and Castro timely appealed.

## ANALYSIS

■ Castro contends that the guards were either acting as servants for both Nikko and FAMCO at the time of the disputed incident, or were servants of FAMCO borrowed by Nikko, under, respectively, sections 226 and 227 of the RESTATEMENT (SECOND) OF AGENCY (1958) ("AGENCY").[5] As such, he argues that Nikko is liable for the actions of the guards. Castro also asserts that there were sufficient indicia before the court indicating that the guards were acting as Nikko's servants, presenting genuine issues of material fact to defeat Nikko's summary judgment motion.

Alternatively, Castro contends that even if the guards were not Nikko's servants, Nikko is vicariously liable for their actions under the RESTATEMENT (SECOND) OF TORTS (1965) ("TORTS"),[6] because he was an "invitee" on the hotel premises, to whom Nikko owed a non-delegable duty to hire responsible security guards.

Additionally, he argues that because Moss, the hotel's front-desk manager, was involved in the scuffle, Nikko is liable for Moss's participation under the doctrine of respondeat superior. Finally, Castro maintains that he alleged in his complaint that the actions of the guards constituted intentional assault and battery. As such, Nikko may be held liable.

We are not persuaded by Castro's arguments and conclude that: (1) there are no genuine issues of material fact from which a reasonable inference could be drawn that the guards were acting as Nikko's servants; (2) the trial court correctly applied the law in determining that the relationship between Nikko and FAMCO was that of independent contractor and that Nikko did not have a non-delegable duty to Castro; and (3) neither liability for negligence under respondeat superior nor liability based on intentional tortious conduct were properly raised or shown.

## I. Genuine Issues of Material Fact

■ When a party moves for summary judgment under Com. R. Civ. P. 56, it is incumbent upon that party to show that there are no genuine issues of material fact. *See Riley*, 4 N.M.I. at 89. Once this has been shown, "the burden shifts to the opponent to show that such an issue does exist." *Id.* "[T]he opponent, by affidavit or otherwise, 'must set forth specific facts showing . . . a genuine issue for trial.'" *Id.* (quoting Com. R. Civ. P. 56(e). For purposes of opposing a summary judgment motion, "[g]eneral denials or conclusory statements are insufficient." *Id.*

■ To defeat a supported motion for summary judgment, the non-moving party must assert sufficient factual indicia from which a reasonable trier of fact could reasonably find in his or her favor. Otherwise, a material fact is not "genuine." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202, 212 (1986) (construing pertinently identical Fed. R. Civ. P. 56). "In essence . . . the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*, 477 U.S. at 251-52, 106 S. Ct. at 2512, 91 L. Ed. 2d at 214 (likening summary judgment inquiry to that for directed verdict).

■ In determining if the level of evidence is "sufficient," the court applies the same evidentiary burden, in this case, preponderance of the evidence, that it does at trial. *See id.*, 477 U.S. at 252-54, 106 S. Ct. at 2512-13, 91 L. Ed. 2d at 214-15 (applying clear and convincing standard to determine if sufficient evidence to send issue of malice in libel suit to jury). Both the "quantum and quality of proof" is to be considered, *id.*, 477 U.S. at 254, 106 S. Ct. at 2513, 91 L. Ed. 2d at 215, and "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* 477 U.S. at 252, 106 S. Ct. at 2512, 91 L. Ed. 2d at 214.

■ Castro does not dispute that an oral agreement existed between Nikko and FAMCO in July of 1991, when the disputed incident occurred. Nor does he dispute that the February 1992 written contract embodies the essence of the agreement in effect the previous July. Thus, we need only look to see if there are genuine issues of material fact with respect to whether the guards were acting as "servants" for Nikko at the time of the incident. We conclude that the court did not err in determining that a jury could only reasonably infer that the guards were employees of an independent contractor, and not servants of Nikko. Hence, the matter was ripe for summary judgment.

---

[5] RESTATEMENT (SECOND) OF AGENCY [hereinafter AGENCY] §§ 226, 227 (1958). In the absence of contrary statutory or customary law, this Court applies the common law as expressed in the Restatements. *See* 7 CMC § 3401.

[6] *See generally* RESTATEMENT (SECOND) OF TORTS [hereinafter TORTS] § 409 (1965).

■ "A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service." AGENCY § 2(1). "A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Id.* § 2(2).[7]

■ In determining if one is a servant or independent contractor, the court looks to the following factors:

(a) The extent of control which, by the agreement, the master may exercise over the details of the work;

(b) Whether or not the one employed is engaged in a distinct occupation or business;

(c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) The skill required in the particular occupation;

(e) Whether the employer of the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) The length of time for which the person is employed;

(g) The method of payment, whether by the time or by the job;

(h) Whether or not the work is a part of the regular business of the employer;

(i) Whether or not the parties believe they are creating the relations of master and servant; and

(j) Whether the principal is or is not a business.

*Id.* § 220(2).

These factors are all examined and no one factor is dispositive. *Id.* cmt. c; *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52, 752 n.31, 109 S. Ct. 2166, 2178-79, 2179 n. 31, 104 L. Ed. 2d 811, 831-32, 832 n.31 (1989).

■ Generally, "it is for triers of fact to determine whether there is a sufficient group of favorable factors to establish the relation." AGENCY § 220 cmt. c. However, "[i]f the inference is clear that there is, or is not, a master and servant relation, it is made by the court [as a question of law]." *Id.*; *see also Burlingham v. Gray*, 137 P.2d 9, 16 (Cal. 1943).

■ Nikko's declarations in support of its summary judgment motion were the following:

1. The work of the security guards is upon instruction of their supervisor. Tobia would get approval from this supervisor if asked to do something by the Nikko manager.

2. No Nikko employee has the responsibility to ensure that security is provided.

3. After April of 1991, FAMCO was informed of hotel policy but given discretion in its handling of that policy.

4. Nikko did not determine how much the guards were paid in wages.

5. Nikko had no authority to terminate an employee of FAMCO.[8]

Attached to the memorandum were copies of deposition excerpts, the complaint and answer, the contract, an affidavit of Vicente T. Attao, General Manager of FAMCO, and a declaration of Yuzo Takano, General Manager of Nikko. The pertinent allegations in Attao's affidavit were:

1. The security guards "were solely in the employ of FAMCO . . . . [and] were not employees of . . . Nikko."

2. FAMCO alone controlled and directed the guards in their duty performance.

3. Nikko was not involved in the guards' recruitment, pay, determination of length of contract, supply of uniforms or equipment, determination of shift a guard would work, or procedures or methods followed by the guards.

Affidavit of Vicente T. Attao *in* Statement of Uncontroverted Facts and Memorandum of Arguments and Authorities in Support of Defendant's Motion for Summary Judgement at Exhibit 24, *Castro v. Hotel Nikko*

---

[7] Unlike a servant, an independent contractor is:

[A] person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent.

AGENCY, *supra* note 5, § 2(3).

---

[8] Statement of Uncontroverted Facts and Memorandum of Arguments and Authorities in Support of Defendant's Motion for Summary Judgment at 2-5, *Castro, supra* note 1, (filed Jan. 14, 1994).

*Saipan, Inc.*, Civ. No. 92-1029 (N.M.I. Super. Ct. filed Jan. 14, 1994).

With respect to the contract, its stated purpose was for FAMCO to provide security "for the protection of Nikko's premises, guests, employees and visitors." Contract for Security Services at 1 *in* Appellant's Excerpts of Record at Exhibit 43. The contract also stated that Nikko was not the employer of the security guards and personnel. *Id.* at paragraph 4. Additionally, the contract provided that: (1) if Nikko was unsatisfied with a guard who did "not fulfil the requirements of the services," the guard was to be replaced at its request; (2) FAMCO was to ensure that "its employees shall maintain, above all, a high standard of moral conduct"; (3) at any time, Nikko could modify the "duties to be performed by [FAMCO] . . . either by telephone or by written notice"; and (4) the places and times of security watches were to be controlled by Nikko. *Id.*, paragraphs 8, 10, 13, and Exhibit A.

These provisions go not to Nikko's control over the conduct of the guards but to a general statement of the services to be rendered by FAMCO. Hence, this evidence is sufficient to satisfy Nikko's assertion that there are no genuine issues of material fact that the guards were employees of an independent contractor, FAMCO. Castro fails to sufficiently overcome these assertions.

Castro argues that the declaration of Edihuel Necesito, the depositions of Reynaldo Llamzon and Toshimi Yoshida, manager of the hotel at the time of the incident, and the job descriptions all place the issue of control by Nikko over the guards in dispute. We disagree. From the evidence submitted in support of and in opposition to the motion for summary judgment, the sole reasonable inference that could be drawn is that the guards were the servants of FAMCO alone and not Nikko.

First, unlike the February 1992 contract, the parties do not contend that the July 1992 job descriptions also relate back to the July 1991 scuffle for purposes of defining the relationships between Nikko, the guards and FAMCO. Thus, we do not see the relevance of the job descriptions with respect to these relationships at the time of the incident.[9]

Second, the pertinent allegations made by Castro in his complaint were as follows: (1) the guards are employees of FAMCO; (2) at all relevant times the guards were acting within the course and scope of their employment; (3) at all times the guards were enforcing the policies of Nikko; and (4) Nikko "exercised control and direction over the actions and duties of the" guards. Complaint and Demand for Jury, *Castro v. Hotel Nikko Saipan, Inc.*, Civ. No. 92-1029 (N.M.I. Super. Ct. filed Aug. 24, 1992). However, these are general conclusions which do not rebut Nikko's motion. See analysis, *supra*.

Finally, the depositions and declaration are insufficient for purposes of establishing a genuine issue of fact regarding *Nikko*'s control over the guards. For example, the statements of Necesito and Llamzon only go to requests by Nikko personnel for security service and not control over the physical conduct of the performance of that service. *See* Declaration of Edihuel Necesito[10] and Deposition of Reynaldo Llamzon[11] *in* Appellant's Excerpts of Record at 15-16, 38. Also, these statements are irrelevant to the nature of the relationship between FAMCO and Nikko as understood by those parties. See analysis, *supra*.

Likewise, Yoshida's deposition does not implicate an issue of genuine material fact. That he stated that he considered "security service . . . to be part of the hotel services," Deposition of Toshimi Yoshida at 21 *in* Appellant's Excerpts of Record at 41, does not relate to Nikko's control over the guards as servants but rather to Castro's alternative claim of whether security services are non-delegable. Furthermore, it is clear from Yoshida's deposition that the contract was made between FAMCO and Nikko to "transfer all the responsibility and all the operation [of security] to . . . FAMCO." *Id.*

Moss's statement that he told the guards to put handcuffs on Castro is insufficient to implicate a genuine issue of whether Nikko exercised the sort of control over the guards contemplated by AGENCY, *supra*. *See* AGENCY § 220 cmt. h (requisite physical control goes to "close supervision or *de facto* close supervision of the servant's work"). The assertion that, during the scuffle, Moss told the guards to handcuff Castro is insufficient to indicate that Nikko was exercising supervision or control over the manner in which the guards performed their work. *See also id.* cmt. f ("[t]hose rendering service but retaining control over the manner of doing it are not servants").

---

[10] We also note that Necesito's statements are wholly *irrelevant to whether Nikko exercised control over the guards on the day of the disputed incident.* Necesito's period of assignment to the Nikko hotel ended in May of 1991. Declaration of Edihuel Necesito *in* Appellant's Excerpts of Record at 15-16.

[11] Llamzon stated that if the front desk manager wanted something checked in a particular area of the hotel, he might contact the security guard assigned to that area. Deposition of Reynaldo Llamzon at 18 *in* Appellant's Excerpts of Record at 38.

---

[9] Even if the job descriptions were relevant to this matter for purposes of showing the relationship between Nikko, FAMCO and the guards, we fail to see how they advance Castro's arguments.

## II. Non-Delegable Duty of Care to "Invitee"

 "Except as stated in [TORTS] §§ 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." TORTS § 409. Castro asserts that, assuming the guards were not Nikko's servants, it is still liable for their actions under the exceptions to this general rule of nonliability.

 The exceptions to nonliability under TORTS § 409 fall into three categories: (1) "[n]egligence of the employer in selecting, instructing, or supervising the contractor," id. §§ 410-15 (personal liability); (2) "[n]on-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff," id. §§ 416-25 (vicarious liability); and (3) "[w]ork which is specially, peculiarly, or 'inherently' dangerous," see id. §§ 426-29 (vicarious liability for contractor's negligence). Id. § 409 cmt. b. Castro's alternative claim for relief is based on his argument that Nikko is vicariously liable for the actions of the guards or FAMCO under the second set of exceptions: that Nikko owed him, as an invitee, a non-delegable duty to provide responsible security guards.

 Under TORTS §§ 416-425, an employer may be vicariously liable for the conduct of an independent contractor because of a non-delegable duty it owes either to the public or the particular plaintiff. An employer may not delegate to an independent contractor a non-delegable duty. Id., introductory note to Topic 2. These provisions, however, do not apply to the case at hand. Instead, they relate only to either repair or maintenance work on chattel or land,[12] and not to an assault committed by an independent contractor's employees.

We infer from Castro's arguments that he wants us to carve an additional exception to the general rule of nonliability of an employer for the actions of the servants of an independent contractor, based, presumably, on public policy. We make that inference because the cases to which he cites are based on public policy considerations such as that announced in dicta by a New York

trial court in *Adams v. F.W. Woolworth Co.*, 257 N.Y.S. 776 (N.Y. Sup. Ct. 1932) (cited in Appellant's Brief at 30).

In *Adams*, the court decided that a hired detective agency was not an independent contractor but rather a servant. It continued, however, to reason that the defendant store should not escape liability even if the agency was an independent contractor, given that "immunity from vicarious liability . . . [presents] opportunities for gross injustice." *Id.*, 257 N.Y.S. at 781-82. The other cases cited by Castro follow this public policy line of reasoning. *See, e.g.*, *Noble v. Sears, Roebuck and Co.*, 109 Cal. Rptr. 269, 275 (Cal. Ct. App. 1973).[13] The *Noble* court noted, however, that this exception to nonliability based on public policy is not uniformly applied. *Id.*, 109 Cal. Rptr. at 273-74.

 Our ability to formulate the common law of this jurisdiction is constrained by the statutory mandate to apply the common law as enunciated in the Restatements. *See Ito v. Macro Energy, Inc.*, 4 N.M.I. 46 (1993);[14] 7 CMC § 3401. If we are to formulate a rule based on public policy, the policy must be implicated in either local law or a recognized need to safeguard the welfare of the general public. *Cf. Diamond Hotel Co., Ltd. v. Matsunaga*, 4 N.M.I. 213, 224 (1995) (Atalig, J., concurring), *aff'd*, 99 F.3d 296 (9th Cir. 1996).[15]

There are no laws in this jurisdiction which extend the exceptions to the Restatement's general rule of nonliability, nor does Castro indicate that an aspect of the public's welfare is endangered by the lack of such an extension. This is our first case involving the question of vicarious liability for the acts of an independent contrac-

---

[12] *See* TORTS, *supra* note 6, §§ 416 (work is likely to create a peculiar risk of harm unless certain precautions are taken), 417 (physical condition of public place in which work to be done), 418 (maintenance of public highways and other public places), 419 (repairs lessor under duty to make), 420 (repairs gratuitously undertaken by lessor), 421 (maintenance of structures), 422 (work on buildings and other structures on land), 422A (work likely to withdraw lateral support from land of another), 423 (making or repair of instrumentalities used in highly dangerous activities), 424 (precautions required by statute or regulation), and 425 (repair of chattel supplied or land held open to the public as a place of business).

[13] "[The] theory of vicarious liability [for tortious conduct of an agent] is not based on the fact that the principal is negligent . . . [but rather] as a matter of public policy, in order to promote safety for third persons." *Noble v. Sears, Roebuck and Co.*, 109 Cal. Rptr. 269, 275 (Cal. Ct. App. 1973) (dicta); *see also Peachtree-Cain Co. v. McBee*, 316 S.E.2d 9, 11 (Ga. Ct. App. 1984) (public policy mandates that "duty . . . to invitees to provide responsible agents was personal and non-delegable"), *aff'd*, 327 S.E.2d 188 (Ga. 1985); *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 861 n.12 (D.C. 1982) (dicta) (same).

[14] "Our jurisdiction is not vested with a similar degree of freedom in formulating our own common law as that exercised by courts in other jurisdictions, because of the statutory dictate that we apply the Restatement." *Ito v. Macro Energy, Inc.*, 4 N.M.I. 46, 56 (1993).

[15] *See also Sugimoto v. Exportadora De Sal, S.A. De C.V.*, 19 F.3d 1309 (9th Cir.) (court would not apply general rule of nonliability because of established California law), *cert. denied*, ___ U.S. ___, 115 S. Ct. 581, 130 L. Ed. 2d 496 (1994).

tor's employees. We are not persuaded that the case before us justifies a departure from the general rule of nonliability of employers of an independent contractor.

## III. Intentional Tortious Conduct

■ Castro also argues that the conduct of the guards was intentional and tortious. Liability on the part of Nikko for intentionally tortious conduct of the employees of an independent contractor alone does not fall within the ambit of the general exceptions to nonliability for the actions of an independent contractor or its employees under the Restatements. See analysis, *supra*. Again, it is not for this Court to expand upon the common law applicable in this jurisdiction without adequate basis.

## IV. Respondeat Superior

Finally, Castro contends that because Moss was involved in the scuffle, Nikko may be liable under the theory of respondeat superior. Nikko argues that Castro improperly raises this issue for the first time on appeal. We agree. Castro failed to allege facts for this claim below and has not convinced us that we should entertain this claim for the first time on appeal.

### A. Castro Failed to Raise Issue of Liability of Nikko under Doctrine of Respondeat Superior

■ For Castro to have raised the issue of respondeat superior in his pleadings, he had to have alleged in his complaint that: (1) the relationship between Nikko and Moss was one of master/servant (or employer/employee); (2) Moss's conduct was tortious; and (3) the tortious conduct was committed while Moss was acting within the scope of his employment. See AGENCY § 219(1). These assertions were not made.

■ Castro argues that complaints are to be liberally construed and that theories of liability need not be specifically pleaded. We agree that "pleadings shall be so construed as to do substantial justice." Com. R. Civ. P. 8(a)(3), (f). However, where a plaintiff has not set forth a particular claim for relief under Com. R. Civ. P. 8(a), (e)(2) and 10(b), the prima facie elements of a claim must each be either directly alleged or implied. See Bolalin v. Guam Publications, Inc., 4 N.M.I. 176, 179-80 n.2 (1994). Castro did not allege in his complaint that Moss was involved in the incident. Moss's involvement was asserted only in response to Nikko's summary

judgment motion.[16] As a basis for relief, Castro must have pleaded Moss's involvement, and there is no support for the contention that the trial court could anticipate that evidence would be produced at trial which would go to a claim under respondeat superior.

### B. Castro's Pleadings not Amended by Motion under Com. R. Civ. P. 15(a)

Castro contends that even if he failed to effectively raise the issues below, leave to amend the complaint should have been freely given under Com. R. Civ. P. 15(a). His arguments are misplaced.

■ Com. R. Civ. P. 15(a) applies only to amendments to a complaint allowed as a matter of course, by leave of the trial court or upon written consent of the adverse party. No such amendment, however, was made or requested below.

### C. Issues Raised for First Time on Appeal Generally not Reviewable

■ We may consider an issue raised for the first time on appeal if: (1) it is one of law not relying on any factual record; (2) a new theory or issue has arisen because of a change in law while the appeal is pending; or (3) plain error occurred and an injustice might otherwise result unless we consider the issue. *Cushnie v. Bank of Guam*, 4 N.M.I. 198, 199-200 (1994). We are not persuaded that any of these exceptions apply to this matter.

## CONCLUSION

Based on the foregoing, we hereby **AFFIRM** the grant of summary judgment in favor of the defendant/appellee, Hotel Nikko Saipan, Inc.

---

[16] It was only in response to Nikko's summary judgment motion that Castro stated that Moss "took part in the battery upon the plaintiff." Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 26, *Castro, supra* note 1 (filed Feb. 10, 1994). Castro asserted that this fact was not discovered until discovery was conducted. *Id.*, n.8. While this may explain why allegations pertinent to the issue of respondeat superior do not appear in Castro's complaint, it does not, nor does Castro attempt to, explain why the complaint was not amended to include such allegations.